CASE 77—PETITION ORDINARY—JANUARY 23.

# Newport News, &c., Co. v. Mercer & Warfield.

APPEAL FROM HARDIN CIRCUIT COURT.

1. RAILROADS—DUTY TO FURNISH CARS.—The law implies an agreement upon the part of a railroad company to furnish necessary cars on a particular day when a request therefor has in due time been made by a shipper of the station agent, who, for that purpose, has the authority of a general agent.

2. SAME.—As a railroad company is not generally held to more than reasonable diligence and care in furnishing cars for transportation of freight, the wreck of a train whereby free movement of cars is temporarily prevented is legal excuse for delay in having them under special agreement at a particular time and place.

3. SAME—BURDEN OF PROOF.—In this action against a railroad company to recover damages for loss resulting from defendant's failure to furnish cars for the shipment of live stock at the time agreed, as defendant admitted the failure to furnish the cars, and pleaded that it used reasonable diligence to have the cars at the place and time agreed, which was prevented by a wreck on the road, the burden of proof was upon the defendant, the allegations of the answer being denied by reply.

4. SAME.—The fact that defendant had at the place agreed the necessary empty cars for the shipment of plaintiffs' stock on the day previous to that fixed for the shipment, and the station agent then assured plaintiffs that the necessary cars would be on hand the next day, does not make the defendant responsible for its failure to hold the cars which were then at the station, provided timely arrangement was made for others to be there at proper time, which was prevented by a wreck. It was, therefore, misleading to tell the jury, without such explanation, that " it was the duty of the train dispatcher to control defendant's cars, and to assign them in the order in which they were called for by the shipper."

5. MEASURE OF DAMAGES.—As the cattle shipped by plaintiffs were intended for sale on the market at destination, the measure of damages, if plaintiffs are entitled to recover at all, is the difference between the market value when they should have arrived and the value at the time of their delivery, provided there was a fall in the market value of such cattle during the delay, and also the additional cost of feeding and caring for the cattle, and injury in weight or fitness for market, that may have resulted from the delay in shipping.

L. A. FAUREST AND P. H. DARBY FOR APPELLANT.

No brief in record.

W. R. HAYNES AND HOBSON & O'MEARA FOR APPELLEES.

1. The burden of proof was upon appellees. .
2. A railway station agent authorized to receive freight for shipment has implied authority to make a contract binding the company to furnish cars on the specified day, the shipper being ignorant of any limitation of such power. (Hutchinson on Carriers, 2d ed., sec. 319 $b$; Harrison v. Mo. Pac. R. Co., 74 Mo., 364; s. c., 41 Am. Rep., 318; Story on Agency, secs. 127, 443; 2 Redfield on Railroads, 113; Denning v. Grand Trunk R. Co., 40 N. H., 455; s. c., 2 Am. Rep., 269.)
3. The measure of damages is the difference between the market value when the goods should have arrived and their value at the time of their delivery. (Hutchinson on Carriers, sec. 774.)
4. After the company had assigned cars to appellees at Princeton, and after the company's agent, acting within the apparent scope of his authority, had notified Mercer that the cars were then and there ready for him, and he accepted them, the company moving those cars and assuming the risk of getting others there, did so at its own peril.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Mercer & Warfield, a firm dealing in live stock, purchased forty-seven fat cattle, to be delivered by November 1, 1892, at Princeton, a station on the road of the Newport News and Mississippi Valley Railroad Company, for shipment to market, which they allege was at Cincinnati, Ohio. They state and show that the person from whom they purchased was requested and authorized to engage two empty rack cars whereon to ship the cattle Saturday evening, October 29, and the local agent of the company agreed to have them ready at that place and time. Friday, October 28, Mercer, a member of the firm, arrived at Princeton from his home in Hardin county, and being told by the agent the cars would be on hand, and, indeed, two empty cars being there then, on Saturday morn-

ing received from the seller and had weighed the cattle, which were put in the company's stock pen preparatory to loading.  But no cars were, at the time agreed, nor until Sunday evening, October 30, furnished, the two mentioned having, by order of the train dispatcher, at Paducah, superior in authority to the local agent, been removed from Princeton.

Mercer & Warfield brought this action to recover of the company two hundred and fifty dollars in damages, which they state resulted to them by reason of said delay of twenty-four hours as follows:  Extra expense for guarding, feeding and watering, and loss of weight and injury in appearance of the cattle so that in sale of them in New York market their value was greatly depreciated.

In an amended petition, the damages are thus laid : "Because of the failure of defendant to furnish the rack cars at the time agreed, plaintiffs failed to reach Cincinnati market, or the Louisville market in time for a sale of their live stock, as there are and were days in Cincinnati and Louisville at the time plaintiffs could have reached the market where bidders for such stock were numerous, and this time was Monday, October 31, 1892, a fact well known to plaintiffs at the time they contracted with defendant for the cars, and if defendant had complied with its contract in furnishing cars to plaintiffs they could have reached said market by Monday, 31st October, but plaintiffs were, by reason of said delay, forced to ship said stock to New York market and sell at great sacrifice," &c.

It is admitted in the answer the cars were not fur-

nished at the time requested, but stated that defend-
ant was hindered and prevented by wreck of a train
upon its road, which occurred a few hours before said
time at a place called Gordon, about forty miles east
of Princeton, whereby it became impossible to get two
cars to Princeton by the time mentioned, as defendant
had arranged to do, or to then obtain them elsewhere
earlier than afternoon of the next day, October 30.
A verdict and judgment having been rendered in favor
of plaintiffs for one hundred and twenty-five dollars,
defendant appealed.

It seems to us, according to the pleadings in this
case, the burden of proof was upon defendant, and
the lower court erred in ruling otherwise.   The failure
to furnish the cars was admitted in the answer, and to
escape a verdict against it, defendant was bound to
prove the averment, denied in plaintiffs' reply, that
reasonable diligence was used to have the two cars at
the place and time agreed, which was prevented by
the wreck.    It is true the answer contains a denial
there was any other contract to furnish the cars than
such as arose from the notice or request by plaintiff.
But as it was duty of defendant as a common carrier,
independent of statutory obligation, to provide rea-
sonable facilities and appliances to transport, when
requested, such goods as it held out ready to carry,
the law implies an agreement to furnish necessary cars
on a particular day when a request has been, in due
time, made by the shipper of a station agent, who,
for that purpose, has authority of a general agent.

But it seems to us as a railroad company is not nor
should be generally held to more than reasonable dili-

gence and care in furnishing cars for transportation of freight, the wreck of a train whereby free movement of cars is temporarily prevented, ought to be treated as legal excuse for delay in having them under special agreement at a particular time and place.   Hence, the following instruction given in this case is proper:  "If the jury believe from the evidence defendant used reasonable diligence to furnish said cars at the time required, but was prevented from doing so by the accident to its train and track at Gordon, then the law is for the defendant and the jury should so find." But the following, unexplained, was misleading: "It was the duty of the train dispatcher to control defendant's cars and to assign them in the order in which they were called for by the shipper."   The jury might very well have inferred from that instruction, and probably did, that the two empty cars at Princeton, Friday, 28, when Mercer arrived, were wrongfully removed.   Consequently, the following asked by defendant ought to have been given:  "If the cars which were at Princeton, October 28, were required elsewhere upon defendant's road, and defendant reasonably expected and arranged to bring other cars to Princeton for plaintiffs' use within the time required by them, but was unable to do so by reason of the accident which occurred to one of its trains, they should find for the defendant."

Defendant was not bound to keep those two cars stationary from Friday to Saturday evening; but had the right to remove them whenever proper and safe conduct of its business required, of which its managing agent was alone authorized to judge, provided

timely arrangement was made for others to be there at proper time, which was prevented by the unforeseen accident.

As to the measure of damages, if plaintiff is entitled to recover at all, the rule applicable in a case like this is thus correctly stated in Hutchison on Carriers: "If the goods are intended for sale on the market at destination, and the carrier unreasonably and negligently delay their transportation, it is now universally agreed, whatever doubts may have been at one time entertained upon the subject, that the general rule by which the damages are to be computed, if goods of the particular kind have fallen in market value during the delay, or if they have depreciated in quality because of the delay, is difference between the market value when the goods should have arrived, and the the value at the time of their delivery, the carrier being liable for extent of the depreciation." (Section 771.)

Accordingly, if there was no difference at Cincinnati, which the evidence shows was the place of destination, in the market value of plaintiffs' cattle on the day they would have arrived, if shipped Saturday, 29th October, and the next day, there was not nor could be loss on that account, and damages sustained, if any, consist of additional cost of feeding and caring for the cattle, and injury in weight or fitness for market, that may have resulted from delay of one day in shipping. And as the instruction given on the subject of damages conforms substantially to that rule, it was not erroneous.

But for the error indicated the judgment is reversed, and case remanded for a new trial consistent with this opinion.