## Davis, Agent, etc. v. McKinley.

(Decided October 30, 1923.)

### Appeal from Taylor Circuit Court.

1. Carriers—Duty to Provide Reasonable Facilities and Appliances for Transportation.—The common law imposes on the carrier the legal duty to provide himself with reasonable facilities and appliances for the transportation of such goods as he holds himself out as ready to undertake to carry, and, where reasonable demand or request has been made, he is liable in damages for his failure to furnish, or his unreasonable delay in furnishing, cars suitable for such purpose, and the same duty is imposed by Ky. Stats., section 783.

2. Carriers—No Relief by Contract for Liability for Failure to Furnish Cars.—In view of Constitution, section 196, no common carrier can be relieved from its duty to furnish cars suitable to transport the freight ·offered, under the common law and Ky. Stats., section 783, by contract or by merely incorporating in its tariff schedule a provision to the effect that it does not own a particular kind of cars and will do no more than endeavor to procure them from the owner, even though such provision be approved both by the Interstate Commerce Commission and the railroad commission of the state.

3. Carriers—Agreement Unknown to Carrier Not Basis of Recovery for Failure or Delay in Furnishing Cars.—An agreement by which shipper was to receive certain prices for poultry, based on weights made by him, could not be the basis of any recovery of damages from a carrier for its failure or delay in furnishing cars for shipment, where the carrier had no knowledge of such agreement.

4. Carriers—Cost of Shipping by Other Means as Item of Damages for Failure to Furnish Cars.—In an action for damages for failure to furnish cars, an item spent for transportation by other means was not allowable merely because the money was spent in order to minimize the loss under a contract, where the carrier had no knowledge of the contract, the measure of damages being the difference between the sum paid and what it would have cost shipper if the freight had been carried by defendant.

5. Carriers—Measure of Damages for Delay in Furnishing Cars Stated.—In an action for damages for delay in furnishing cars for transportation of poultry, the measure of damages is the difference between the market value of the poultry at the place of destination in the condition in which it should have arrived without unnecessary delay and the market value in the same place at the time and in the condition in which it was actually delivered.

B. D. WARFIELD, J. H. McCHORD, W. C. McCHORD and C. W. WRIGHT for appellant.

THOMAS C. MAPOTHER and JOHN T. MOSS for appellee.

Opinion of the Court by Judge Clay—Reversing.

L. E. McKinley brought this suit against the Director General of Railroads in charge of the Louisville & Nashville railroad to recover damages in the sum of $8,434.58 for unreasonable delay in furnishing cars for the transportation of live poultry from Campbellsville to Louisville. The amount sued for embraced the following items: $1,195.33 for feeding and caring for poultry during the period of delay, $300.00 for transportation made necessary by the delay, $5,571.87 for depreciation in weight and fitness, and $1,367.38 for depreciation in market value. From a verdict in his favor for the full amount sued for, this appeal is prosecuted.

For several years McKinley had been engaged in the business of buying, selling and shipping live poultry from Campbellsville, a station on the line of the Louisville & Nashville Railroad. During the month of November, 1918, he had purchased and assembled a large quantity of live poultry at Campbellsville, where it was to be sold f. o. b. cars there at prevailing market prices and transported to Louisville on the order of the purchaser and at his cost. To meet his requirements he ordered in advance on blanks furnished by the company, and bearing its name, several L. P. T. cars. The usual time required for supplying such equipment was from two to four days after the order was received. According to the evidence for McKinley, some of the cars ordered were not placed at all, while there was a delay from one to four weeks in furnishing the others. During the time of the delay, there was a large depreciation not only in the weight and fitness, but in the market price of the poultry.

It was shown by appellant that at the time of the transaction in question, and prior thereto, the company's tariffs contained the following provision:

"The Louisville & Nashville Railroad Company does not own any live poultry, palace or patent live stock cars, private line refrigerator cars, tank cars or other specially constructed equipment that is not shown in the Official Railway Equipment Register. When special equipment not owned by this company is desired, and request is made therefor in the usual way, the Louisville & Nashville Railroad Company will endeavor to procure such cars by requisition on the owners, and will place them for loading as soon as possible in the usual and customary routine of business."

On the trial it was agreed by the parties that the above statement and regulation was at the time the cars were ordered by McKinley, and had been since the date of its publication in 1913, on file in the office of, and approved by, the Interstate Commerce Commission and the Railroad Commission of Kentucky, and during said time it was published with and as a part of the tariff and schedule of the Louisville & Nashville Railroad Company, and was in force and accessible to the public in the office of the agent of the Louisville & Nashville Railroad Company at Campbellsville, Kentucky, and other agents of the company. It was further shown that live poultry cars were cars specially equipped with coops and wired and arranged so that poultry may be fed, watered and otherwise cared for *en route*; that the company did not own any of these cars, but that they were all owned by the Live Poultry Transit Company in Chicago, and that the custom was to obtain them from that company unless they were already in possession of appellant. It was also shown that the Live Poultry Transit Company charged a special fee for the use of its equipment, and that this fee and the company's charge for transportation were collected at the same time by the company's agent at the point of shipment, and the fee transmitted to the Live Poultry Transit Company. There was further evidence to the effect that, upon receipt of the orders placed by McKinley, the company used every means to obtain the cars from the Live Poultry Transit Company, but was unable to do so.

In view of the foregoing facts, it is insisted that appellant was not liable for any delay in furnishing the cars, and that the trial court should have directed a verdict in his favor.

The common law imposes on the carrier the legal duty to provide himself with reasonable facilities and appliances for the transportation of such goods as he holds himself out as ready to undertake to carry (Newport News and Mississippi Valley R. Co. v. Mercer, 96 Ky. 475, 29 S. W. 301), and where seasonable demand or request has been made, he is liable in damages for his failure to furnish, or his unreasonable delay in furnishing, cars suitable for such purposes. Illinois Central R. R. Co. v. River & Rail Coal & Coke Co., 150 Ky. 489, 150 S. W. 641, 44 L. R. A. (N. S.) 643. Not only so, but the same

duty is also imposed by section 783, Kentucky Statutes, which provides:

"Every company shall furnish sufficient accommodation for the transportation of all such passengers and property as shall within a reasonable time previous thereto offer, or be offered, for transportation at places established by the corporation for receiving and discharging passengers and freight."

As our Constitution provides that no carrier shall be permitted to contract for relief from its common law liability, Constitution, section 196, it is not perceived how the carrier may escape such liability or annul the statute by merely incorporating in its tariff schedule a provision to the effect that it does not own a particular kind of cars, and will do no more than endeavor to procure them from the owner, even though such provision be approved both by the Interstate Commerce Commission and the Railroad Commission of this state. If it may do so in the case of cars used for the transportation of such ordinary freight as live poultry, there is no reason why it may not go further and classify cars specially adapted for the transportation of particular kinds of freight in such a way as practically to avoid all liability as a common carrier. Indeed, the duty to furnish suitable cars has been held to apply to refrigerator cars (10 C. J. 86; Mathis v. Southern Ry., 65 S. C. 271, 43 S. E. 684, 61 L. R. A. 824; St. Louis I. M. & S. Ty. v. Renfroe (Ark.) 100 S. W. 880, 10 L. R. A. (N. S.) 317), and to live poultry cars, Ft. Worth & D. C. Ry. Co. v. Strickland, 208 S. W. 410, when such cars are in common use, and the carrier has for some time held himself out as ready to carry the kind of freight usually carried in such cars, and the soundness of the rule cannot be doubted.

But it is argued that if appellant should be held liable for his failure to furnish the cars in question, the effect would be to give appellee an unlawful preference over other shippers, as to whom appellant would be under the obligation of maintaining his established rates, which include the special fee for the use of the cars. As we view the case, no question of rates is presented, but only the question of legal duty and liability for a failure to perform that duty. Not only so, but if appellant was under a duty to provide himself with cars suitable for the transportation of live poultry, and to supply such cars to appellee after reasonable demand or request therefor,

he owed the same duty to other shippers of live poultry, and that being true, no discrimination would result. It follows that the peremptory instruction was properly refused.

It is clear from the evidence that the finding of the jury is larger than the evidence justifies. While there was evidence that appellee had some kind of agreement with the Kentucky Creamery Company at Louisville, by which it had agreed to pay certain prices for the poultry, based on the weights made by appellee, it was not shown that appellant had notice of this agreement. In the absence of such notice, such agreement could not be made the basis of any recovery. In other words, appellant was not liable for any loss measured by the terms of such contract, but only for such loss as occurred during the period of delay measured by the difference in market value. It is not exactly clear from the evidence when the poultry was weighed, but in some instances, at least, it is apparent that the weights were taken some time before the cars ordered were to be placed, and that the jury allowed for the entire depreciation in weight, without making any deduction for the depreciation occurring between the time the weights were taken and the time when the cars should have been placed.

A recovery was allowed for the $300.00 which appellee seems to have spent for the transportation to Louisville of certain poultry for which no cars were furnished by appellant. It is insisted that this was proper because the money was spent in order to minimize the loss, and the whole sum was lost to appellee because, under his contract with the creamery company, the latter was to bear the expense of transportation. As before stated, however, the rights of the parties are not to be measured by the contract because appellant had no notice thereof. With the contract eliminated, all that appellee was entitled to recover on this item was the difference between the sum paid, it being shown to have been the reasonable cost of the transportation, and what it would have cost appellee if the poultry had been carried by appellant.

The instruction on the measure of damages is erroneous in that it authorized a recovery for the difference in the market value of the poultry at Campbellsville, the place of shipment, instead of Louisville, the place of delivery. In a case like this, the measure of damages is the difference between the market value of the poultry at

the place of destination in the condition in which it should have arrived without unnecessary delay and its market value at the same place at the time and in the condition in which it was actually delivered. Newport News & Mississippi Valley R. Co. v. Mercer, *supra*.

Judgment reversed and cause remanded for new trial consistent with this opinion.