## L. H. & ST. L. Railway Company v. Johns & Patterson.

(Decided February 1, 1924.)

### Appeal from Jefferson Circuit Court
### (Common Pleas Branch, First Division).

1. Commerce—Administrative Questions within Exclusive Jurisdiction of Interstate Commerce Commission.—Where a dispute as to overcharge for shipment by reason of classification and rating involved only administrative questions, the matter was for the Interstate Commerce Commission, and courts, both state and federal, were without jurisdiction.

2. Carriers—That Goods were Regarded as Rags by Shipper and Carrier Not Controlling as to Rate.—That army goods were styled and regarded as rags by the shipper, and received and billed as such by the carrier, was not controlling as to their proper classification for rate purposes, since the carrier was bound to collect the prescribed rate on a proper classification.

3. Commerce—Classification of Worn Garments Held to Invoke Administrative Question, to be Determined by Interstate Commerce Commission.—A complaint that "barracks rags," consisting of worn garments sold by the pound and pressed into bales, of which 75 per cent of 80 per cent are worthless, except as rags, should not be classified as "clothing" for rate purposes, involves an administrative question, exclusively within the jurisdiction of the Interstate Commerce Commission, and action for overcharge is not maintainable.

HARRIS W. COLEMAN and TRABUE, DOOLIN, HELM & HELM for appellant.

W. S. HEINDENBERG for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Appellees purchased of the United States government, at Camp Funston, Kansas, a quantity of army goods, at prices ranging from 6⅛ to 12⅝ cents per pound.

These goods were sold as "barracks rags," and as stated in the proposals, consisted of worn-out cotton and woolen garments and denim bags. They were pressed into bales by machines and shipped by freight to appellees at Louisville, Ky., as "rags." Upon arrival over appellant's line, they were inspected by the Southern Freight and Adjustment Bureau, and reclassified as "clothing."

The established rates in carload lots between Camp Funston, Kansas and Louisville, Kentucky, are agreed to be 72 cents per hundred pounds for rags and $2.53 per hundred pounds for clothing, plus a three per cent war tax in any event.

Having been required by appellant to pay the higher rate, which they did under protest, appellees thereafter instituted this action to recover the difference between the two rates, alleged to be $1,194.91. Appellants filed answer in four paragraphs traversing material averments of the petition and claiming in turn that the classification as clothing was proper and there was no overcharge; that even if classified as rags, the overcharge was only $489.46, because of failure to load one of the two cars to its capacity, and that a proper classification and rating of the shipment involved administrative questions within the exclusive jurisdiction of the Interstate Commerce Commission.

This latter contention will be considered first, since if true, ordinary courts, both state and federal, are without jurisdiction to determine the dispute. Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426.

It is insisted for appellees that the doctrine of that case, and many others like it, does not apply because no complaint is made by them that the established rates involved are unreasonable. But many questions other than the reasonableness of established rates are administrative and give to the Interstate Commerce Commission exclusive jurisdiction of a dispute arising between shipper and carrier as to the applicable rate for an interstate shipment.

Indeed it would seem that any disputed question of fact affecting classification and therefore rates, about which courts or juries might reasonably disagree, and especially if dependent upon expert knowledge of the facts and practices upon which classifications are based, must be determined by the commission under the commerce act as construed by the United States Court, in order to insure the uniformity of rates that act contemplates and requires. Northern Pacific Ry. Co. v. Solum, 247 U. S. 477; Texas Pac. Ry. Co. v. American Tie Co., 234 U. S. 138; Great Northern Ry. Co. v. Merchants Elevator Co., 259 U. S. 285; 42 Supreme Court Reports, 477.

But whether or not the doctrine is as broad as that, we are convinced the case at bar comes within its proper limits. Apparently there is no established rate for used soldiers' clothing such as was most of this shipment nor any clearly established rule for determining when used clothes cease to be clothing and become rags. It is argued for appellant, that to be entitled to classification as rags, clothing must be torn into strips before shipment and have value only for conversion into fiber or for reweaving purposes, or it must be unfit for the purposes for which it was originally fashioned.

In support of the former contention, we are referred to a note under the Tariff on Rags, reading:

"Ratings will also apply on old bags or bagging, cut or torn in pieces, and having value only for conversion into fibre, or on old worn out carpets or rags having value only for conversion into fibre or for reweaving purposes."

It was also competently proven, and without contradiction, that it is the established practice of carriers to require all goods to conform to these requirements before being entitled to the rag rate. If this rule is to be applied to all used cotton and woolen army goods, whether bags, carpets, garments or what not, as we are inclined to think is true, then clearly this shipment was not entitled to classification as rags. It was not torn in strips, was purchased primarily for the purpose of salvaging such garments and bags as could again be used as such, and from 20 to 25% of the shipment was so salvaged.

It also was shown that cotton and woolen rags were worth approximately one to four cents per pound, respectively, in the Louisville market at the time, whereas appellees paid, on an average ten cents and more a pound for these goods in Kansas for shipment to Louisville.

The fact that these goods were styled and regarded as rags by the shipper, and received and billed as such by the carrier, is not controlling or even convincing, if competent, as evidence, since regardless thereof the carrier was bound to collect the prescribed rate upon a proper classification. Pittsburgh Ry. Co. v. Fink, 250 U. S. 577.

The view that these goods were not entitled to the rag rate is strengthened by the opinion of the Interstate

Commerce Commission in Weissbaum Co. v. Attorney General, etc., 53 I. C. C. 681, which deals with a somewhat analogous situation and holds that second-hand iron and steel machinery, boilers, etc., to be entitled to scrap-iron classification and rates, must be broken up before shipment, so that they cannot again be used for the purpose for which they were used when new.

Accepting this view as true, as we do, what was the applicable rate? Seemingly clothing is the only permissible classification under published tariffs, since it is expressly provided therein that:

"The charge for a package containing freight of more than one class shall be at the rating provided for the highest class freight contained in the package. All of these articles need not be specified on the shipping order or bill of lading, but only one of the articles taking the highest rating; in such instances the following notation must also appear on the shipping order and bill of lading 'and other articles classified the same or lower.' "

But we cannot believe that such classification and rates were ever intended to cover worn garments such as these sold by the pound, compressed into bales and of which 75 or 80 per cent was worthless except as rags.

While it is not expressly so stated by appellees, their real and just complaint, if any they have, is that it was unreasonable and improper to apply the clothing rate to this shipment, that it is not proper to so classify it, and that there is not, in the published tariffs, any reasonable or applicable classification for it. If this be true, and we think it is, then unquestionably administrative questions exclusively within the jurisdiction of the Interstate Commerce Commission are involved in the dispute, and appellee should have appealed to it for relief.

We are further of the opinion that the fourth paragraph of the appellant's answer alleges sufficient facts to make this manifest, and that the evidence is but confirmatory thereof. It follows that the lower court erred in sustaining the demurrer to that paragraph of the answer, and in not dismissing the action for lack of jurisdiction upon final hearing.

Wherefore the judgment is reversed, and the cause remanded for proceedings not inconsistent herewith.