## Gardner v. Louisville & Nashville Railroad Company, et al.

(Decided January 22, 1926.)

### Appeal from Carroll Circuit Court.

1. Commerce—Question of Adequacy of Car Service Held One to be Determined by Interstate Commerce Commission, and State Court Without Jurisdiction Until Commission Acts.—Under Transportation Act Feb. 28, 1920 (U. S. Comp. St. Ann. Supp. 1923, sections 8563(10) (11), (13), (14), (21), the question of character and adequacy of car service, at least in interstate shipments, is in the first instance an administrative matter for the Interstate Commerce Commission, and, until the commission acts, a state court could not entertain suit based on alleged inadequacy of car service; there being nothing in the Carmack, or Cummins, Amendment to the contrary.

2. Pleading—Demurrer Not Ordinarily Susceptible to Pleading Merely Negativing Adverse Pleading.—Ordinarily, a demurrer cannot be sustained to a pleading which merely negatives an adverse pleading.

3. Pleading—Attaching Certified Copies of Carrier's Tariffs and Classifications Does Not Prevent Denial.—Though, under U. S. Comp. Stats., section 8584(12), and Ky. Stats., sections 1635-1637, certified copies of carrier's tariffs and freight classifications must be received as evidence, they are not evidence until offered, and attaching them to answer, does not prevent plaintiff from denying allegations of answer, in view of Civil Code of Practice, sections 120, 128.

THOMAS C. MAPOTHER and J. A. DONALDSON & SONS for appellant.

ASHBY M. WARREN, WM. A. NORTHCUTT, WOODWARD, WARFIELD & DAWSON and GEO. B. WINSLOW for appellee Railroad Company.

ALFRED J. PARKER and THEODORE W. BATES for appellee Poultry Company.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming as to the Live Poultry Transit Company and reversing as to the Louisville & Nashville Railroad Company.

In this action the appellant, who was the plaintiff below, seeks to recover damages on account of losses he claims he sustained by reason of the alleged negligent delay of the appellee in furnishing him specially constructed live poultry cars owned by the appellee, Live Poultry Transit Company, for the purpose of transporting live poultry from Worthville, Ky., to Pittsburg and Philadelphia, Pa. After putting in issue the allegations of the petition and pleading certain affirmative matters in connection with appellant's alleged delay in loading the cars after they had been furnished to him, the appellee, Louisville & Nashville Railroad Company, hereinafter called "the railroad company," by paragraphs 7 and 8 of its answer as amended, pleaded in substance that the cars ordered by the appellant were all owned by its co-appellee, the Live Poultry Transit Company; that it (the railroad company) did not hold itself out to the public as owning or furnishing any such type of cars on its own account; that in accepting orders for such cars, and in endeavoring to execute the same it simply acted as agent of the shipper; that it had in its tariffs, which were duly published and filed, specifically stated that it owned no special equipment as here ordered, and would only endeavor whenever a request was made for such type of cars to procure them and place them for loading as soon as possible; and that this notice was also embodied in the various freight classifications covering the period involved in this case. The railroad company further pleaded that by the transportation act of 1920 the Interstate Commerce Commission was given full power and authority to control the use, supply, movement, distribution, exchange and return of locomotives, cars and other vehicles used in transporting property, including special types of equipment; that under this act the carrier was required to file with the Interstate Commerce Commission all of its tariffs and schedules relating to rates and equipment; that in accordance with such duty it had so filed such tariffs and schedules and same had been approved by the commission; that these rules, tariffs and schedules were established by the railroad company and approved by the commission in order to provide for

a fair and equitable distribution of all cars of every type whatever; and that to require the railroad company in the face of its tariffs and schedules to furnish the special type of cars here called for would result in an unjust and unfair discrimination in appellant's favor. The railroad company further pleaded that the Interstate Commerce Commission and the circuit courts of the United States had exclusive power and jurisdiction to hear and determine all complaints and suits for damages arising out of the administration of the act, and that the state circuit court was without jurisdiction to entertain this suit. There were filed with this answer copies of all the applicable parts of the railroad company's tariffs and schedules on file with the Interstate Commerce Commission duly certified by the proper officer. A reply traversed *in toto* all the affirmative allegations of this answer. A demurrer was interposed to the reply and sustained. The appellant then tendered an amended petition which the court declined to allow to be filed, but ordered to be made a part of the record. Appellant declining to plead further, his suit was dismissed and he brings this appeal.

We may at once dispose of the appeal as to the appellee, Live Poultry Transit Company. In his reply brief filed in this court, the appellant admits that under the case of Ellis v. I. C. C., 237 U. S. 434, the appellee, Live Poultry Transit Company, is not a common carrier. Appellant says: "We are convinced that the Live Poultry Transit Company is not a common carrier and do not wish to pretend to think otherwise. We are therefore unable to advance any theory upon which it owed an independent obligation directly to a shipper at common law or by statute, and as appellant in fact made no special contract with either appellee for delivery of these cars at a particular time we might as well go to the limit and admit our inability to hold it by contract." It would therefore appear that appellant has abandoned his appeal as to the Live Poultry Transit Company, and as to it the judgment of the lower court must be affirmed.

As to the appellee, railroad company, the first question to be determined is whether or not the demurrer filed to the reply should have been carried back to the answer and sustained, for, if so, the lower court erred in dismissing the appellant's petition. By the transportation act of 1920, U. S. Compiled Statutes, 1923 Supplement, section 8563 (11), it is made the duty of every carrier, such as is the appellee in this case, to furnish safe

and adequate car service, and to establish, observe and enforce just and reasonable rules, regulations and practices with respect to car service. The act further provides that every unjust and unreasonable rule, regulation and practice with respect to car service is prohibited and declared to be unlawful. By another section of the same act, U. S. Compiled Statutes, 1923 Supplement, section 8563 (10), the term "car service" is declared to include the use, control, supply, movement, distribution, exchange, interchange and return of locomotives, cars and other vehicles used in the transportation of property, including special types of equipment. By still other sections, U. S. Compiled Statutes, 1923 Supplement, sections 8563 (13), 8563 (14), the Interstate Commerce Commission is authorized to require all railroads subject to the act to file with it from time to time their rules and regulations with respect to car service and the commission may in its discretion direct that such rules and regulations be incorporated in their schedules showing rates, fares and charges for transportation. The commission is also authorized, after hearing on complaint or upon its own initiative without complaint, to establish reasonable rules, regulations and practices with respect to car service by carriers. By a later section, U. S. Compiled Statutes, section 8563 (21) the commission is further authorized, after hearing in a proceeding upon complaint or its own initiative without complaint, to require the railroads to provide themselves with safe and adequate facilities for performing as a common carrier its car service, as that term is used in this act. From these sections of the transportation act, which was in effect during the time covered by the complaint of the appellant in this case, it is clear to us that it was the intention of Congress to provide that the question of the character and adequacy of car service, at least where interstate shipments are involved, should in the first instance be an administrative matter to be decided by the Interstate Commerce Commission, for on no other basis could the uniformity aimed at by Congress be surely obtained. Under the act the carrier is authorized to establish rules and regulations governing car service. Although it does not appear that the Interstate Commerce Commission has required the carriers to file their rules and regulations respecting such service (see United States v. New River Company, 265 U. S. 533), yet the railroad company has in this instance done so. The carriers are not only authorized but

it is made their duty to establish, observe and enforce such rules, regulations and practices and the Interstate Commerce Commission may, after complaint or on its own initiative, order such rules and regulations to be changed and require the carrier to provide itself with safe and adequate facilities as to car service. It is true that the act says that any unreasonable rule or regulation is void, but there must be lodged somewhere the right to determine whether or not the complained of rule or regulation is void, and that place, under the act, is, as we think, the Interstate Commerce Commission. Were this not so, it might result that one court would hold the rule in question unreasonable and another court might regard it as reasonable. With such a conflict, the shipper in the one case would enjoy a special facility denied to a shipper in the other case. Our views are fortified by the reasoning of the Supreme Court in Loomis v. Lehigh Valley R. Co., 240 U. S. 43. In that case Loomis had been for a long time a shipper of grain and produce over the Lehigh Valley Railroad. The carrier had for a number of years been in the habit of supplying lumber without charge for the purpose of constructing inside doors or transverse bulkheads in ordinary box cars furnished by it for the transporting in bulk of grain and which were inadequate for said service; but in 1906 it discontinued this practice and refused either to supply the lumber or cars completely prepared for carrying in bulk such grain. Loomis ordered 200 cars for the purpose of transporting wheat in bulk and the carrier furnished him the ordinary box cars. Loomis was compelled to expend quite a sum of money in constructing these inside doors and bulkheads, and this he demanded back from the carrier, which it refused to pay. He then brought his suit in the state court of New York for damages on the theory that the carrier had failed to perform its common law duty in furnishing adequate cars. Among the defenses of the carrier was that the court had no jurisdiction over the claim since the shipment was an interstate one, and their tariffs filed with the Interstate Commerce Commission made no provision for the payment or allowance for inside doors, bulkheads or lumber for constructing the same. The Court of Appeals of New York held that it was the common law duty of the railroad to furnish the cars equipped with inside doors or bulkheads, but that as Congress had assumed control over interstate shipments it could

give Loomis no relief. On appeal, the Supreme Court said:

"Speaking through Mr. Justice Lamar in Mitchell Coal Co. v. Penna. R. R. (230 U. S. 247), *supra*, we said: 'The courts have not been given jurisdiction to fix rates or practices in direct proceedings, nor can they do so collaterally during the progress of a lawsuit when the action is based on the claim that unreasonable allowances have been paid. If the decision of such questions was committed to different courts with different juries, the results would not only vary in degree, but might often be opposite in character—to the destruction of the uniformity in rate and practice which was the cardinal object of the statute.'

"In the Minnesota rate cases (230 U. S. 352), *supra*, we further said: 'The dominating purpose of the statute was to secure conformity to the prescribed standards through the examination and appreciation of the complex facts of transportation by the body created for that purpose; and, as this court has repeatedly held, it would be destructive of the system of regulation defined by the statute if the court without the preliminary action of the commission were to undertake to pass upon the administrative questions which the statute has primarily confided to it.'

"And in Tex. & Pac. Ry. Co. v. American Tie Co. (234 U. S. 138), *supra*, the rule was thus stated: 'It it equally clear that the controversy as to whether the lumber tariff included crossties was one primarily to be determined by the commission in the exercise of its power concerning tariffs and the authority to regulate conferred upon it by the statute. Indeed, we think it is indisputable that the subject is directly controlled by the authorities which establish that for the preservation of the uniformity which it was the purpose of the act to regulate commerce to secure, the courts may not as an original question exert authority over subjects which primarily come within the jurisdiction of the commission.'

"An adequate consideration of the present controversy would require acquaintance with many intricate facts of transportation and a consequent appreciation of the practical effect of any attempt to define services covered by the carrier's published

tariffs, *or character of equipment which it must provide,* or allowances which it may make to shippers for instrumentalities supplied and services rendered. In the last analysis the instant cause presents a problem which directly concerns ratemaking and is peculiarly administrative. Atchison, Topeka & Santa Fe Ry. v. United States, 232 U. S. 199, 220. And the preservation of uniformity and prevention of discrimination render essential some appropriate ruling by the Interstate Commerce Commission before it may be submitted to a court. See Penna. R. Co. v. Puritan Coal Co., *supra* (237 U. S. 121), pp. 128, 129; Penna. R. Co. v. Clark Coal Co., *supra* (238 U. S. 456), pp. 469, 470.

"If, in respect of interstate business, the courts of New York may determine, as original matters, ratemaking problems, those in other states have like jurisdiction. The uncertainty and confusion which would necessarily result is manifest. Ample authority has been given the commission, in circumstances like those here shown, to administer proper relief, and in connection therewith to approve some general rule of action. In so doing it would effectuate the great purpose for which the statute was enacted."

The Interstate Commerce Commission in the course of its opinion in Vulcan Coal & Mining Co. v. Illinois Central Railroad, 33 I. C. C. 52, said:

"Furthermore, one can not escape the conclusion that the question as to the extent to which defendant failed to comply with the duty it owed complainants to furnish cars upon reasonable request therefor is an administrative one of which the commission alone can take original jurisdiction. This must be true unless it be the carrier's absolute duty to furnish cars at all times to the full extent of the shipper's demands. Only then would this complaint present a question like that considered in P. R. R. Co. v. International Coal Co. (230 U. S. 184), *supra.* It may be that after the determination by the commission of the number of cars which the defendant should have furnished and of the times when it should have furnished them the courts would have concurrent jurisdiction with the commission of the ascertainment of

the damages suffered by complainants by reason of defendant's failure to perform that duty. However, it is not a carrier's duty to furnish all cars demanded at all times. In substance section 1 provides that upon reasonable request it shall be the duty of every carrier to furnish cars. By virtue of these requirements it becomes the carrier's duty to maintain a reasonably adequate car supply, and the question of what is a reasonably adequate car supply is just as much an administrative one as the question of what is a reasonable rate. The legal sufficiency of defendant's car supply can not be definitely fixed by the statute. It is a question which, using the language of the court in the Mitchell case, 'involves a consideration and comparison of many and various facts and calls for the exercise of the discretion of' this tribunal."

The reasoning of these opinions is entirely *apropos*. One of the great purposes of the transportation act of 1920 was to secure uniformity in those respects essential to a proper discharge by the carrier of its duties to the public. As said in Dayton Goose Creek Railway Co. v. United States, et al., 263 U. S. 456:

"The new act seeks affirmatively to build up a system of railways prepared to handle promptly all the interstate traffic of the country. It aims to give the owners of the railways an opportunity to earn enough to maintain their properties and equipment in such a state of efficiency that they can carry well this burden. To achieve this great purpose, it puts the railroad systems of the country more completely than ever under the fostering guardianship and control of the (Interstate Commerce) Commission, which is to supervise their issue of securities, *their car supply* and distribution, their joint use of terminals, their construction of new lines, their abandonment of old lines, and by a proper division of joint rates, and by fixing adequate rates for interstate commerce, and in case of discrimination for intrastate commerce, to secure a fair return upon the properties of the carriers engaged."

While, of course, it is the duty of the carrier to furnish adequate facilities to the shipper both by the common law and this act, whether or not its declared

method of performing such duty is a compliance with such requirement, must, in the last analysis, under the provision of that act be left to the Interstate Commerce Commission for determination.

There is nothing in the popular styled Carmack, now Cummins amendment, now a part of the transportation act of 1920 (act February 28, 1920, c. 91 sec. 436-438), so confidently relied upon by appellant, in conflict with this conclusion. This part of the transportation act provides that any common carrier *receiving* property for interstate transportation shall be liable to the holder of the bill of lading issued for such property for the full loss or damage to such property caused by it or any connecting carrier over whose road the property passes. It further provides that no contract, receipt, rule, regulation or other limitation of any character whatsoever even though contained in any tariff filed with the Interstate Commerce Commission shall exempt such carrier from such liability. There are some provisos to this section not here material. It is quite apparent that this Cummins amendment has nothing to do with the problem before us. It deals with an attempted limitation of a carrier's liability for loss or damage to property after its reception by the carrier for transportation in interstate commerce. It does not attempt to deal with a carrier's responsibilities before it has received the goods and that is the case before us. *Compare* Davis, Director General v. John L. Roper Lumber Co., 70 L. Ed. (Advance Sheets) 55. Nor is the case of Davis, Agent v. McKinley, 200 Ky. 699, 255 S. W. 523, cited by appellant, conclusive of the issue before us. That case involved only intrastate shipments, and hence involved other considerations than are involved in this case where only interstate shipments are in question. Moreover, the transportation act of 1920 had not been passed when the transactions in that case occurred.

It follows, from the foregoing, that the trial court did not err in refusing to carry the demurrer back to the answer and to sustain it thereto. Whether or not the Carroll circuit court would have had jurisdiction of appellant's cause had the rule as to car service here involved been previously declared unreasonable by the Interstate Commerce Commission or had a rule been established by that body requiring the carrier to furnish the special type of equipment here called for, we need

not determine as such question is not now presented by the record. It is sufficient to say that at least until the Interstate Commerce Commission acts, the state court may not entertain such claim.

By his reply, appellant, as stated, put in issue all the averments of the railroad's answer. Ordinarily a demurrer cannot be sustained to a pleading which merely negatives an adverse pleading. The railroad company, however, urges that as it filed with its pleading certified copies of its tariffs and freight classifications in which appear the rules and regulations with respect to car service here relied upon as a defense, the appellant was without power to deny the pleading which set out in its body such tariffs, freight classifications, rules and regulations. It is true that *when offered in evidence,* these certified copies must be received as evidence of the facts they state, (Kentucky Statutes, sections 1635, 1636, 1637; U. S. Compiled Statutes, section 8584 (12)), but the case before us never reached the stage of reception of evidence. It went off entirely on the pleadings. Section 120 of the Civil Code provides:

> "If an action, counterclaim, set-off or cross-petition be founded on a note, bond, bill or other writing, as evidence of indebtedness, it must be filed as a part of the pleading, if in the power of the party to produce it; and if not filed, the reason for the failure must be stated in the pleading; if upon an account, a copy thereof must be filed with the pleading."

The rules and regulations of the railroad in its tariffs and freight classifications here involved were not writings evidencing any indebtedness, which was the foundation of any claim herein set up by that carrier. Hence they did not come within the purview of this section of the Code. Section 128 of that same Code provides:

> "Sec. 128 (1). In addition to the writings which a party is required by section 120 to file as the foundation of his action or defense, he may file, as an exhibit, with his pleading, or with leave of court at any time pending the action, any writing upon which he may intend to rely as evidence. . . .
>
> "(3). In an ordinary action, such exhibits shall not constitute part of the record, unless it show that they were used on the trial."

Newman on Pleading and Practice, second edition, sections 204a, 204c, 204d, says of these sections of the Code:

"Such an exhibit forms a part of the pleading by the express language of this section (*i. e.,* 120) and may therefore well aid a defective allegation or in other words a material fact imperfectly stated. . . . When the exhibit is not the foundation of the action, it does not in an ordinary action become any part of the pleadings nor even of the record unless made so by bill of exceptions. . . . The section of the Code quoted above (*i. e.,* 120) was intended to apply mainly to actions at law, and by its express terms refers only to such writings as are the foundation of the action, and at the same time the evidence of the indebtedness of the adverse party. . . . But if such pleading (*i. e.,* which fails to set out the effect of the exhibit not required to be filed, in its body) be objected to by motion or perhaps by demurrer the party would in general be compelled to state in the body of his pleading the facts intended to be relied on, directly and positively, and not by way of reference to an exhibit or other pleading filed, especially where the paper referred to was not the foundation of the plaintiff's action. In such cases the party must, in the body of the pleading, state in substance or in terms so much of the writing as is essential to the action or defense and not merely refer to and file it as an exhibit. . . . The distinction must be observed between a writing which is not only evidence of indebtedness, but is also the foundation of an action, and which must, therefore, be filed as a part of the pleading, and a writing on which the party intends to rely as evidence, and which he may or may not file with his pleading, or with leave of court, at any time pending the action. The former is part of the record, and it is unnecessary to show that fact by bill of exceptions. The latter, being filed merely as evidence, constitutes, in an ordinary action, no part of the record, unless it be shown that it was used upon the trial, which should be done by bill of exceptions. In an equity action, however, it is a part of the record, unless the record shows it was not used upon the trial."

Thus it is clear that since this case was an ordinary action, although the railroad company had a right to file with its pleadings the exhibits referred to in this record, they were not evidence of the facts contained in them until offered in evidence and made part of the record as such. Until then, so far as their evidentiary character is concerned, they were simply documents which the carrier might or might not introduce on the trial as it thought best. The sanctity of their verity did not attach until offered in evidence, and since the Code makes no provisions for them becoming a part of the record as evidence until offered as such, it follows that appellant was within his rights in putting in issue the averments of the railroad's answer despite the filing with it of the exhibits referred to.

The case of L. H. & St. L. Ry. Co. v. Johnson & Patterson, 201 Ky. 752, 258 S. W. 312, cited by the railroad, announces no different rule of practice. The answer of the carrier in that case presenting the issue of an administrative decision first to be made by the Interstate Commerce Commission had been demurred to, and the demurrer sustained. The opinion held that the demurrer should have been overruled and the action dismissed for lack of jurisdiction. The court did not mean to intimate that the shipper could not put in issue any statement of fact appearing in that answer. On the contrary, there was no intimation on the part of the shipper that he wished to traverse the answer. Hence the court ruled as it did. Here, though, the shipper has actually traversed all the facts stated by the railroad company, and thus put the burden upon it of establishing such facts by evidence.

We know of no rule forbidding the appellant from putting the facts stated in the carrier's answer in issue. He had averred in his petition facts which made out a *prima facie* case against the railroad. The latter then pleaded the facts on which it relied for a defense. These facts were put in issue. If the facts of the answer were a defense, the negation of them destroyed that defense. It follows that the lower court erred in sustaining the demurrer to this reply, and for this error its judgment as to the railroad company is reversed.

Affirming as to the Live Poultry Transit Company, and reversing as to the Louisville & Nashville Railroad Company. Whole court sitting.