## Walters v. Louisville & Nashville Railroad Company.

(Decided June 24, 1927.)

### Appeal from Warren Circuit Court.

1.  Commerce.—For question of correct interstate freight charge to be for exclusive consideration by Interstate Commerce Commission, there must be disputed question affecting classification and rates, of such nature that courts and juries might reasonably disagree, and requiring in its solution, exercise of expert knowledge of facts and practices on which classification is based.

2.  Commerce.—If mere mathematical calculation will determine correct interstate freight charge, question is not exclusively for Interstate Commerce Commission, and there is nothing to deprive proper court, state or federal, of jurisdiction to find facts for correct basis of calculation and give judgment accordingly.

3.  Commerce.—Where there was no dispute as to correct classification of interstate shipment or rates applicable thereto, only disputed questions being weight of any single article and application of tariffs in such classification thereto, no admnistrative queston for solution exclusively by Interstate Commerce Commission was involved, so as to deprive state court of jurisdiction; there being no question requiring expert knowledge, nor one about which juries or courts might reasonably disagree.

4.  Appeal and Error.—Motion for new trial held unnecessary to present question whether court or Interstate Commerce Commission had jurisdiction to determine correct interstate freight charge.

STOUT & HERDMAN and DAFOE & DAFOE for appellant.

RODES & HARLIN, WOODWARD, WARFIELD & HOBSON and ASHBY M. WARREN for appellee.

Opinion of the Court by Judge Thomas—Reversing.

On April 29, 1924, the appellant and plaintiff below, William Walters, contracted at Bowling Green, Ky., with the appellee and defendant below, Louisville & Nashville Railway Company, to ship from that place to Tinsley's Landing on Cumberland river, in the state of Tennessee. one oil well drilling outfit, which made one carload, and for a total agreed consideration of $517.44, which was then and there paid. The shipment required a routing over the lines of defendant from Bowling Green to Junction City, Ky., and from thence over the line of the Cincinnati, New Orleans & Texas Pacific to Burnside, Ky. From thence it was to be carried by boat on the Cumberland river to its destination, which was to be made by the Cumberland Transportation Company, a corporation operating such boat line. Upon arrival at Burnside, where the freight was to be rehandled by unloading it from the car onto the boat, the Cumberland Transportation Company declined to receive it for its pro rata part of the freight that had been paid by plaintiff to the agent of defendant at Bowling Green. It insisted that the shipment was an interstate one and that under the combination tariffs for such a shipment filed with the Interstate Commerce Commission at Washington by the carriers handling it the initial carrier (defendant) failed to collect the proper charges by $761.46, and it declined to carry the freight to its destination unless the latter sum was paid by plaintiff. He yielded and paid under protest the additional freight, and later brought this action against the initial carrier to recover it, upon the grounds that the charges were in violation of the original shipping contract and that it was exorbitant and unreasonable and in excess of what it was permitted to charge.

The answer, as amended, admitted the total amount of freight agreed upon by defendant's agent at Bowling Green and its collection, and likewise admitted the payment of the additional sum sued for, which made a total of $1,278.90, but it attempted to justify the collection of the additional charge upon the ground that the applicable tariff to such an interstate shipment came within classification 5 in the schedules filed with the Interstate Commerce Commission and on file in the offices of each of the carriers handling the shipment, and that defendant's agent at Bowling Green mistakenly and errone-

ously charged the tariff provided by Classification 6 in the schedule filed with the Interstate Commerce Commission, when he should have applied the rates applicable under classification 5, and it alleged that to charge plaintiff only the amount agreed upon by defendant's agent at Bowling Green (it being less than the rates contained in classification 5 in the filed schedules) would be a discrimination in his favor and violative of the terms of the Interstate Commerce Act (U. S. Comp, St. sec. 8563 et seq.), and thus render illegal the shipping contract as to the amount of the freight charges, and also subject defendant to a criminal prosecution.

The reply admitted that the shipment came under the terms of classification 5 as contended for by defendant; but it averred that defendant erroneously calculated the total amount of the freight due under that classification in demanding of plaintiff the additional charges sued for in the action, and that a correct estimate of the total charges under that classification was made by defendant's agent at Bowling Green, and that plaintiff was entitled to recover the sum sued for, or, if not, whatever amount he was compelled to pay under protest over and above the correct estimate under classification 5.

It is conceded that the correct rate under classification 5 (provided no single article weighed more than 10,-000 pounds) was 99 cents per 100 pounds, plus a flat charge of $12.50 on each single article of the shipment weighing more than 4,000 pounds; but, if any single article of the shipment weighed more than 10,000 pounds, then the rate under that classification was considerably higher per 100 pounds and would require the shipper to pay more than the $517.44, the amount estimated and agreed upon by the agent at Bowling Green for the entire shipment. The court dismissed the action upon the theory that the questions involved were administrative ones, and, the shipment being an interstate one, exclusive jurisdiction was with the Interstate Commerce Commission to settle the dispute, which conclusion was bottomed upon the principles announced by us in the case of Louisville, Henderson & St. Louis Railway Company v. Johns & Patterson, 201 Ky. 752, 258 S. W. 312, and approved in the later case of Gardner v. Louisville & Nashville R. R. Co., 212 Ky., 540, 279 S. W. 947. Some of the cases from the Supreme Court of the United States in which it was so held, and which are recited in the Johns-Patterson case are: Texas

& Pacific Railroad Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann Cas. 1075; Texas & Pacific Railroad Co. v. American Tye Co., 234 U. S. 138, 34 S. Ct. 885, 58 L. Ed. 1255; Northern Pacifie Ry. Co. v. Solum, 247 U. S. 477, 38 S. Ct. 550, 62 L. Ed. 1221, and Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943. In the last three cited cases it was held, in substance, and which we followed and formulated as stated below in the Johns-Patterson case:

> "That any disputed question of fact affecting classification, and therefore rates, about which courts or juries might reasonably disagree, and especially if dependent upon expert knowledge of the facts and practices upon which classifications are based, must be determined by the (Interstate Commerce) Commission under the Commerce Act as construed by the United States (Supreme) Court, in order to insure the uniformity of rates that act contemplates and requires."

In order, therefore, for the question to be one for the exclusive consideration of the Interstate Commerce Commission there must be a disputed question affecting the classification, and, resultingly, the rates, and that question must be of such a nature as that courts and juries might reasonably disagree, and the solution of which requires the exercise of expert knowledge of facts and practices upon which the classification is based. It necessarily follows, therefore, that, if the question to be solved is not of the nature indicated and consists only in mathematical calculations, it does not become one *exclusively* for the Interstate Commerce Commission to solve. If only a mathematical calculation will solve the litigated question, there is nothing to deprive the proper court, state or federal, of its jurisdiction to find facts for the correct basis for the calculation and give judgment accordingly. As we have seen, there is no dispute in this case as to the correct classification, or as to the rates applicable to the classification. There is, therefore, no question requiring expert knowledge, nor one about which juries or courts might reasonably disagree.

To begin with, the general rate on the involved shipment is conceded to be 99 cents per 100 pounds. If any single article composing it weighed exceeding 4,000 pounds, then the total amount to be charged should be

estimated on that basis, and, if such an article weighed more than 10,000 pounds, then the total amount to be charged should be fixed according to that basis as prescribed under the undisputed correct classification No 5. So that the disputed questions consist in determining (a) the weight of any article of the shipment; then (b) the application of the tariffs in classification No. 5 to such weight. The questions involved are no different in kind than if the shipment was, by way of illustration, a carload of wheat at so much per 100 pounds and which was according to the tariff filed with the Interstate Commerce Commission for such a shipment. In that case the only question would be the weight of the shipment which, multiplied by the rate, would give the total amount to be charged. Surely, no one could successfully contend that in such case an administrative question was involved for the *exclusive* solution of the Interstate Commerce Commission. We conclude, therefore, that the facts of this case do not bring it within the determinative principles announced in the Johns-Patterson case, and also by the federal opinions above cited, and that the court erred when it dismissed the action for want of jurisdiction. We do not agree with counsel for defendant that this case is one wherein a motion for a new trial was necessary in order to present the question of jurisdiction. Robinson v. Paxton, 210 Ky. 575, 276 S. W. 500.

Wherefore the judgment is reversed, with directions to set it aside and to proceed in accordance with the principles of this opinion.