# Louisville & Nashville Railroad Company v. Brashear, et al.

(Decided December 10, 1926.)

## Appeal from Perry Circuit Court.

1. Commerce—State Must Surrender its Jurisdiction in, and Right to Regulate Matters Within, Interstate Commerce Commission's Powers Constitution U. S. art. 1 Section 8; Interstate Commerce Act, Section 12, as Amended by Act Cong. Feb. 28, 1920, Section 415 [U. S. Comp. St., Section 8576]).—Interstate Commerce Act, section 12, as amended by Act Cong. Feb. 28, 1920, section 415 (U. S. Comp. St., section 8576), enacted pursuant to power of Congress under Const. U. S. art. 1, section 8, vested Interstate Commerce Commission with complete and exclusive control of everything pertaining to regulation of interstate commerce, and state must surrender its jurisdiction and right of regulation whenever question involved is within purview of Commission's powers.

2. Commerce—Interstate Carrier's Furnishing of Cars, Used in Interstate Commerce, for Single Intrastate Shipment, is Within Interstate Commerce Commission's Exclusive Regulatory Power (Interstate Commerce Act, Section 12, as Amended by Act Cong. Feb. 28, 1920, section 415 [U. S. Comp. St., Section 8576]).—Furnishing for distribution of cars by interstate carrier, using them as part of its equipment to carry on interstate commerce, thought intended for single specific intrastate shipment, is within regulatory power of Interstate Commerce Act, section 12, as amnded by Act Cong. Feb. 28, 1920, section 415 (U. S. Comp. St. section 8576), to exclusion of that of state.

3. Courts—Action Against Interstate Carrier Under State Statute for Failure to Furnish Full Supply of Cars Held Not Within State Court's Jurisdiction (Ky. Stats., Section 783).—Action against interstate carrier for damages by failure to furnish 100 per cent. supply of coal cars, as required by Ky. Stats, section 783, should have been dismissed for want of jurisdiction in circuit court, on showing that cars demanded were instrumentalities of interstate commerce, and that defendant furnished more than plaintiff's pro rata supply of cars under rules of Interstate Commerce Commission.

4. Commerce—State Statute, Requiring Full Supply of Cars Demanded, Held Not Within Proviso of Federal Statute, Saving

State's Right to Require Just and Reasonable Intrastate Service (Ky. Stats., Section 783; Interstate Commerce Act, Section 1, subd. 17, as Amended by Act Cong. Feb. 28, 1920, Section 402, [Comp. St. Section 8563]).—Ky. Stats., section 783, requiring carriers to furnish entire supply of cars requested, held not within proviso in Interstate Commerce Act, section 1, subd. 17, as amended by Act Cong. Feb. 28, 1920, section 402 (Comp. St., section 8563), that nothing in such act shall impair state's right, in exercise of police power, to require just and reasonable intrastate freight service, in view of clause, "excepting in so far as . . . inconsistent with any lawful order of" Interstate Commerce Commission.

Carriers—Wagon Miners Hold Not Required to Load Coal Cars Through Chute from Tipple to Recover for Carrier's Failure to Furnish Proper Number of Cars Demanded.—Wagon miners, unloading coal with hand shovels from wagons into cars on carrier's siding, instead of loading cars on shipper's siding through a chute from a tipple, which was prevailing and more expeditious method, held not thereby barred from recovering damages for carrier's failure to furnish proper number of cars demanded.

ASHBY M. WARREN, W. A. NORTHCUTT, WOODWARD & WARFIELD, JESSE MORGAN, and C. S. LANDRUM for appellant.

BAILEY P. WOOTTON and WOOTTON, SMITH & WOOTON appellees.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Reversing.

At the time the matters complained of herein occurred (August and Septemer, 1920) the appellees and plaintiffs below were engaged in mining and shipping coal near the station of Viper in Perry county, Kentucky, through and by the process commonly known and referred to in this record as "wagon mining," which is to say, that plaintiffs would extract their coal from their mines and haul it in wagons to a siding maintained by appellant and defendant below, Louisville & Nashville Railroad Company, and then unload it with hand shovels from the wagon into the car placed on the siding along its main track, one of which was located at Viper, and it was the nearest one to plaintiffs' mines and from which they loaded and shipped their coal in the manner indicated, consuming from 24 to 48 hours in loading each car. Plaintiffs brought this action against defendants alleging that beginning on August 23, 1920, and continuing to and including September 3rd thereafter, defendant failed and refused to furnish to and locate for them cars on its siding at Viper, for which seasonable requests had been

made, and that it thereby did not furnish them a full or 100% supply of cars demanded and requested by them; by reason of which they were prevented from shipping and selling the coal which they had contracted at a profit of $5.00 per ton, and they sought judgment against defendant for the damages sustained, measured by the profits they would have made, in the aggregate of $2,750.00.

Defendant demurred both specially and generally to the petition, both of which were overruled, and it filed its answer consisting of five paragraphs, the first of which was a traverse of the material averments of the petition. The second one pleaded that the government took charge of its railroad equipment and facilities on December 16, 1917, for war purposes and that it retained such possession until March 1, 1920, when by an act of Congress defendant's property so taken over by the government was returned to it, and which congressional act was an amendment to the original interstate commerce act passed in 1887, the amendment being generally known as the Transportation Act; that during government control it did not enlarge the sidings along defendant's track nor maintain or repair those that had been constructed so as to keep them in good condition, and that defendant after obtaining possession under the Transportation Act had not had sufficient time to make such repairs and that the sidings so turned over to it were inadequate to supply the demands and needs of those shippers similarly engaged as were plaintiffs, and therefore the siding at Viper was insufficient to furnish plaintiffs with a 100% supply of cars or any more than were furnished to them.

The third paragraph alleged that plaintiff on account of the great cost of loading coal by the process they adopted, were only sporatic operators during periods of abnormal prices for coal, produced by any cause and that such conditions existed at the time complained of, and plaintiffs and others who were so induced to embark in similar undertakings made such a demand for side trackage upon which to station the cars they demanded as to require the exclusive appropriation of defendant's siding tracks, which were ordinarily sufficient under normal conditions, and that, if defendant had furnished all of the cars demanded it would have taken over completely its house tracks and sidings at Viper for such purposes. The fourth paragraph charged plaintiffs with

violating the act of Congress of August 10, 1917, by selling their coal at a greater rate than allowed by that act, and for that reason they were barred from maintaining the action.

The fifth paragraph reaffirmed the turning of its property back to it by the government through the Transportation Act as an amendment to the interstate commerce act and that the Interstate Commerce Commission created by the original act had complete control and jurisdiction of the supply of cars and other equipments for the transportation of commerce and that said Commission had issued orders within its jurisdiction prohibiting defendant from furnishing cars to plaintiffs while operating in the manner indicated and had issued other rules with reference to the furnishing of cars for the shipment of coal or other freight and that the prohibitive order referred to was issued on August 25, 1920, and is known as service order No. 14. The fifth paragraph was afterwards amended and the enactment of the original interstate commerce act, together with all of its amendments was specifically pleaded, and that the Interstate Commerce Commission, under the powers conferred upon it by the original act and its amendments, one of which was on February 28, 1920, had prescribed regulations for the distribution of cars both for the shipment of coal and other commodities and both under normal and abnormal conditions; that at the time complained of, because of the previous existence of the war and the revival of business thereafter, there was a great and unprecedented demand for coal and at the same time there was a shortage of cars due to government control, and insufficient time to increase the supply and other recited causes, and that the Interstate Commerce Commission under the powers conferred upon it by section 1, paragraph 2 of the amendment to the interstate commerce act on February 28, 1920, had prescribed rules for the distribution of cars equally and *pro ratably* among miners along interstate commerce trackage according to the capacity of production, and that defendant prior thereto had filed with the Interstate Commerce Commission similar rules and that it furnished to plaintiffs during the times complained of more than their due percentage of cars, and that but for such conditions and under normal conditions it had on hand and was supplied with an ample number of cars to provide for and take care of the shipping of coal

along its lines where there was located 962 coal mines in the different named states through which it ran and that its supply of cars for that purpose numbered 25,650. It again reiterated the promulgation by the Interstate Commerce Commission of service order No. 14, *supra.*

The defensive pleadings presented the issue relied on with far greater detail than we have stated them, but our statement thereof we deem sufficient to present the legal questions involved, except it should be added that there was an averment that because of the facts relied on the Perry circuit court had no jurisdiction of the cause and for that reason also defendant asked its dismissal. The reply traversed the defensive pleadings, except there was no denial therein that defendant was amply supplied and equipped with sufficient cars to supply the demand of mining operators along its line under normal conditions, and that fact stands admitted in the record, but if not so, it was proven without contradiction. The court sustained the demurrer filed to the fourth paragraph of the answer and struck some portions of others, but left in the case the main issue as to the jurisdiction and regulation by the Interstate Commerce Commission upon the subject of the furnishing and distribution of cars.

The trial was had before a jury and the court, in its instructions, submitted and allowed a recovery under the provisions of section 783 of our statutes, which in effect requires at all times and under all conditions a 100% supply of cars when properly demanded or requested by the shipper. A verdict was returned in favor of plaintiffs for the sum of $1,000.00, and defendant's motion for a new trial having been overruled it prosecutes this appeal, relying upon numerous grounds for a reversal of the judgment, chief among which are: (1) That the court erred in overruling the motion to dismiss the action for want of jurisdiction, and (2), if mistaken in ground (1), then the court erred in overruling defendant's motion for a peremptory instruction in its favor. Because of the conclusion reached as set out below we deem it unnecessary to discuss or determine any of the relied on grounds except the two mentioned. Because of the great amount of space required and the time necessary to be consumed therein, we have concluded to not set out the applicable portions of the interstate commerce act or any of the amendments thereto further than to make a general reference to such portions thereof as

are relevant to the issues involved, leaving that detailed information to be obtained by the reader of this opinion, the greater per cent of whom will be members of the profession.

By section VIII article I of the federal Constitution it is expressly prescribed that "The Congress shall have power . . . to regulate commerce with foreign nations and among the several states, and with the Indian tribes." By virtue of that power congress passed the Interstate Commerce Commission act and all of its amendments and created therein the Interstate Commerce Commission as an administrative body which was vested by the act as amended (section 12, act February 28, 1920) with power and authority to make all such rules and regulations, under varying conditions that it thought necessary in the exercise of its complete control of interstate commerce in order to effectuate fairness and equality of both shipper and carrier in such commerce and which the act as amended expressly declared to include the furnishing of facilities, rates, trackage, terminals, and every other item going to make up commerce as an entirety, and the Supreme Court of the United States has declared in a number of cases that such action on the part of Congress pursuant to its delegated power in the Constitution was intended to and did vest the Interstate Commerce Commission with complete and exclusive control of everything appertaining to the administration, regulation and control of interstate commerce and that when done such powers in the Commission superseded all state regulations upon the subject, statutory or otherwise, and that the latter must surrender its jurisdiction and right of regulation and control to that of the Commission whensoever the question involved was one coming within the purview of the unit of control vested in the Commission; and which would necessarily be true from the fact that the Constitution reserved the exclusive right in Congress to regulate and control that subject.

An almost unlimited number of cases rendered by both the inferior and supreme courts of the United States have so declared without a dissenting note, but it will be sufficient to insert here only Gibbons v. Ogden, 9 Wheaton 1, and Simpson v. Shepard, 230 U. S. 352, the latter commonly known as the "Minnesota Rate Case." In that case in discussing that particular phase of the subject the opinion, *inter alia,* said: " 'The completely

internal commerce of a State, then, may be considered as reserved for the State itself' (Id., p. 195). This reservation to the states manifestly is only of that authority which is consistent with and not opposed to the grant to Congress. There is no room in our scheme of government for the assertion of State power in hostility to the authorized exercise of Federal power. The authority of Congress extends to every part of interstate commerce, and to every instrumentality or agency by which it is carried on; and the full control by Congress of the subjects committed to its regulation is not to be denied or thwarted by the commingling of interstate and intrastate operations. This is not to say that the Nation may deal with the internal concerns of the State, as such, but that the execution by Congress of its constitutional power to regulate interstate commerce is not limited by the fact that the intrastate transactions may have become so interwoven therewith that the effective government of the former incidentally controls the latter. This conclusion necessarily results from the supremacy of the national power within its appointed sphere. McCullock v. Maryland. 4 Wheat. 316, 405, 426; The Daniel Ball, 10 Wall, 557, 565; Smith v. Alabama, 124 U. S. 465, 473; Baltimore & Ohio R. R. Co. v. Interstate Commerce Commission, 221 U. S. 612, 618, 619; Southern Railway Co. v. United States, 222 U. S. 20, 26, 27; Mondou v. N. Y., N. H. & H. R. R. Co., 223 U. S. 1, 47, 54, 55.

"The grant in the Constitution of its own force, that is, without action by Congress, established the essential immunity of interstate commercial intercourse from the direct control of the States with respect to those subjects embraced within the grant which are of such a nature as to demand that, if regulated at all, their regulation should be prescribed by a single authority. It has repeatedly been declared by this court that as to those subjects which require a general system of uniformity of regulation, the power of Congress is exclusive."

Later cases than the last cited one reiterating and emphasizing the propositions as so stated are: General American Tank Car Corporation v. Day, 46 Supreme Court Rep. 234, decided on January 21, 1926; Lancaster v. McCarty, 267 U. S. 427; State of Colorado v. United States, 46 Supreme Court Rep. 452; Alabama and Vicksburg Railway Co. v. Jackson and Eastern Railway Co.,

46 Supreme Court Rep. 535, and United States v. New York Central R. R. Co., not yet reported but decided by the Supreme Court on November 22, 1926.

Those opinions and other like ones proceed upon the theory that when a matter is properly within the scope of interstate commerce it becomes an integral part of it, and that the federal Constitution and the enactment of Congress were intended to and did create but a single control of such commerce and which is absolutely necessary for its due and proper administration, since there would be endless confusion as well as certain destruction if each state could make its own regulations and take its own control of and authority over the facilities and instrumentalities of interstate commerce, although the particular shipment was between points entirely within the jurisdiction of the state. If that were permissible the unified control reserved by the Constitution to Congress would be destroyed as well as the purpose of the Constitution in so providing, and the question in the instant case is: Whether the character of shipments in which plaintiffs were engaged, though intrastate but including the use of the facilities (cars) of the defendant, an interstate carrier, and using those cars in interstate commerce, so affects the latter commerce as to become a part of it and, therefore, within the jurisdiction of the Interstate Commerce Commission as to the question of distribution and furnishing cars?

In the cited case of United States v. New York Central R. R. Company, in speaking generally on that question and which was the right of the Commission to control certain conduct relating to localized terminal facilities through which both intra and interstate commerce were transacted said: ''Where, as here, interstate and intrastate transactions are interwoven the regulation of the latter is so incidental to and inseparable from the regulation of the former as properly to be deemed included in the authority of intrastate commerce by statute . . an interpretation of the statute which would in practice require the segregating of all shipments in interstate commerce would make compliance with the Commission's orders impossible and defeat the purpose of the act.'' The same, in substance, was said in the case of Houston and Texas R. R. Co. v. United States, commonly known as the ''Shreveport case,'' 234 U. S. 342, involving a

question of the binding effects of rates filed with the Interstate Commerce Commission as applicable to an intrastate shipper and which discriminated against an interstate shipper to the same destination. In commenting on that case the supreme court in its opinion in the Lancaster case said: "That authority rested on the supremacy of federal authority in respect to interstate commerce. The intrastate rates fixed by the Texas state railway commission from Houston and Dallas eastward to Texas points were a discrimination against the interstate traffic between Shreveport and those same points, and therefore it was held to be within the power of the Interstate Commerce Commission in preventing such unlawful discrimination under the interstate commerce act to direct the railways to ignore the Texas commission rates and to establish rates not unduly discriminating against interstate commerce, in intrastate traffic. Such an order, of course, included classification as well as rates. The two are so bound together in the regulation of interstate commerce that the effect of both must be reasonable and without undue discrimination. The Interstate Commerce Commission, therefore, had full authority to issue this order for the adoption of the western classification for intrastate points between Houston and Cisco, both in Texas. The conflict between the revised statutes of Texas and the order of the Interstate Commerce Commission can only be settled by recognition of the supremacy of the federal authority." The furnishing for distribution of cars by an interstate carrier and used by it as a part of its equipment to carry on interstate commerce even though intended for a single and specific intrastate shipment, comes within the purview of the last mentioned interpretation as is shown by the case of Chicago, Rock Island & Pacific Ry. Co. v. Hardwick Farmer's Elevator Co., 226 U. S. 426. But without that opinion there would be no difficulty in so concluding, since cars in which shipments may be made are as much a part of interstate commerce as is the track of the carrier, its terminals or its rates. A discrimination in the furnishing of cars would adversely affect the uniformity intended by the federal statutes as would a discrimination in rates, and it was held in the case of Morrisdale Coal Co. v. Penn. Railroad Co., 230 U. S. 304, that the regulation of car distribution was a part of the administrative duties of the Interstate

Commerce Commission under its authority to regulate and control interstate commerce.

It, therefore, uncontradictedly appears in this case that defendant was an interstate carrier and the cars demanded of it by the plaintiffs were instrumentalities in carrying on that character of commerce and that because of prevailing and unavoidable conditions it did not have a sufficiency of cars to furnish a 100% supply though it was so supplied in normal times, and that defendant had complied with the regulations, obeyed the orders and filed with the Interstate Commerce Commission its rules and had furnished plaintiffs with more than their *pro rata* supply of cars under such conditions and in accordance with such rules and regulations, and it becomes necessary to determine what was the duty of the court in the premises. The Supreme Court in the Shreveport case, *supra,* and those of Mitchell Coal and Coke Co. v. Pennsylvania, 230 U. S. 247, and other cases referred to in those opinions, necessarily held that in cases properly within the jurisdiction of the Interstate Commerce Commission (and which we have found includes this one) the state court was without jurisdiction to hear and determine any question involving the reasonableness of any regulation or order of the Interstate Commerce Commission upon the question involved or any properly filed rule of the carrier with reference thereto; that if the shipper desires to call in question the rule of the carrier he should make application to the Commission in the manner provided by the federal statutes and if he desired to question the propriety of any promulgated rule, regulation or order made by or filed with the Commission, then the only court having jurisdiction was a proper federal one, and that in no event could a state court take jurisdiction, save and except where the carrier was failing to observe its rules filed with the Commission or any regulation made by it. The complaint in this case is not based on the fact that defendant failed to observe its filed rules or any regulation made and promulgated by the Commission and thereby discriminated against plaintiffs in the enjoyment of their rights as measured by such rules and regulations. In other words the only jurisdiction the Perry circuit court had under the facts disclosed by this record when the action was filed was to inquire whether plaintiffs were receiving their just dues under the rules and regula-

tions filed with and made by the Interstate Commerce Commission with reference to the furnishing of cars and which were in force at the time of the transactions complained of. The action was based upon no such cause of complaint, but wholly and entirely upon the failure of defendant to furnish to plaintiffs a 100% supply of cars as required by our statute, section 783, but which as we have seen, was superseded from and after the time Congress properly took jurisdiction of the matter.

It was, therefore, the duty of the court under the authority of the case of Lambert Run Coal Co. v. West Virginia, 267 Fed. 776, and on appeal to the Supreme Court reported in 258 U. S. 377, to have dismissed the case for want of jurisdiction upon its becoming apparent that the questions involved were of exclusive federal jurisdiction, either before the Interstate Commerce Commission or the appropriate district or circuit court. It was so manifested at the close of the evidence and a motion was made to that effect but overruled with exceptions. That motion should have been sustained because of the fact that the suit was not based upon any alleged or proven facts giving the Perry circuit court jurisdiction. See also Penn. Ry. Co. v. Puritan Coal Co., 237 U. S. 121, and Corrona Coal Co. v. Southern Ry. Co., 67 Lawyers Edition 470.

But it is insisted that this case comes within the proviso in subdivision 17, section 402 of the amendment to the interstate commerce act of date Februray 29, 1920, saying: "However, that nothing in this act shall impair or affect the right of a state in the exercise of its police power to require just and reasonable freight and passenger service for interstate business *except* in so far as such requirement is inconsistent with any lawful order of the Commission made under the provisions of this act." We have already, in effect, disposed of that contention when we found that the furnishing of cars here involved, because of their interwoven connection with interstate commerce, was properly a part of it and that the rules and regulations of the Interstate Commerce Commission as well as of the carirer were lawfully made and promulgated under the provisions of that act and on account of which this contention could not be upheld because the situation came under the exception to the provisio and it was so held in the Shreveport case, *supra,* wherein the court said: "The question was thus not

simply one of transportation that was 'wholly within one state.' These words of the proviso have appropriate reference to exclusively intrastate traffic, separately considered; to the regulation of domestic commerce as such. The powers conferred by the act are not thereby limited where interstate commerce itself is involved." It is, therefore, clear that reliance may not be had on the proviso referred to.

By taking more space and stating in greater detail the facts and cases supporting the questions determined by the Supreme Court with excerpts from the opinions, many of which we have not even cited, we could more satisfactorily and, perhaps, clearly, have framed the opinion; but we are convinced that as done it sufficiently establishes the conclusions we have reached, which are: That, although plaintiffs contemplated intrastate shipments, the demanded facility, which was cars used in carrying on Interstate Commerce, were so interwoven therewith as to become a part of it, and the distribution of which was administrative and exclusively within the jurisdiction of the Interstate Commerce Commission and that being true plaintiffs' remedy was an application to the commission to correct the rules promulgated by defendant and filed with it, or an application to the proper federal court, unless defendant was discriminating against them by failing to comply with such rules and regulations and refusing to furnish them their proper *pro rata* of cars thereunder in which latter event only could the Perry circuit court take jurisdiction.

But the petition alleged no such dereliction and did not seek recovery upon that ground and proceeded solely upon the supposed rights of plaintiffs to ignore the interstate commerce question involved and to proceed to assert their rights under the section of our statutes, *supra.* After the issual of service order No. 14 by the Interstate Commerce Commission defendant was under no duty to furnish any coal cars to plaintiffs as long as that order continued in force, and, as we have seen, it could not be modified or nullified except by a resort to the proper federal procedure, the Perry circuit court having no jurisdiction to do so. L. H. & St. L. Ry. Co. v. Johns & Patterson, 201 Ky. 752, and Gardner v. L. & N. R. R. Co., 212 Ky. 540. The evidence established without contradiction that plaintiffs were furnished more than their

proper *pro rata* of cars as measured by the regulations of the Interstate Commerce Commission, and the rules of the company filed with it. So that, if plaintiffs had sought recovery for a discrimination against them under such regulations and rules the peremptory instruction would still be proper under the uncontradicted evidence heard at the trial; but, we repeat, plaintiffs could not even then so proceed in the Perry circuit court, except for such failures on the part of defendant before the issuing of service order No. 14.

In addition to the foregoing, defendant, in support of its contention that it was entitled to a peremptory instruction and in support of its demurrer to the petition, relies on the case of Harp v. Choctow O. & G. R. Company, 125 Fed. 445, which was a decision of the United States Circuit Court of Appeals for the 8th circuit composed of Judges Sanborn, Thayer and Vandeventer, the latter of whom is now a justice of the Supreme Court of the United States. The court in that opinion written by Judge Sanborn, held, in substance, that wagon miners seeking to use the tracks and cars of a carrier in the manner hereinbefore described could not force the carrier to permit them to do so, because of the unreasonable delay in loading cars thereby producing their increased idleness, and because of no legal requirement that the carrier should devote its side tracks for that purpose; that such method of loading and shipping freight did not comport with the more approved convenient and expeditious method of loading the cars through a chute from a tipple, by means of which it is shown it may be loaded in less than one-half hour, and in which method the cars occupy a siding provided by the shipper. In other words, that opinion held that a shipper must adjust himself to the prevailing methods of handling the particular commodity and placing it in the custody of the carrier and that the latter could not be compelled against its wish to accept freight in any other manner. But in view of the fact that defendant prior to the transactions here complained of held itself out as a carrier of coal loaded by the method adopted by plaintiffs in this case, and no contrary regulation having been adopted, we are not prepared to apply that opinion to the facts contained in this record.

Wherefore, the judgment is reversed with directions to grant the new trial and for proceedings consistent with this opinion.

Whole court sitting.