## LOUISVILLE & N. R. CO. v. CORY.
### No. 5707.

Circuit Court of Appeals, Sixth Circuit.
Dec. 9, 1931.

---

only during periods of unusually high prices for coal. He recovered a judgment in the District Court for an alleged breach of the appellant's common-law duty to furnish cars for the interstate transportation of such coal during a period commencing on or about June 15, 1922 (the mine was acquired May 15, 1922, and some three or four weeks expired before it was in operating condition), and terminating on or about March 31, 1923. The action was begun September 18, 1925, or almost two years and six months after the last of the wrongs complained of. At the conclusion of all the evidence the defendant moved the court for a directed verdict in its favor upon grounds, among others, which, for the purposes of this opinion, may be summarized as: (a) Because the record contains no substantial evidence to support a cause of action properly cognizable by the District Court without initial resort to the Interstate Commerce Commission; and (b) because the statute of limitations of two years fixed by section 16 of the Interstate Commerce Act, 49 U. S. C. § 16(3) (b), 49 USCA § 16(3) (b), as affected by the decision in Kansas City So. R. Co. v. Wolf, 261 U. S. 133, 43 S. Ct. 259, 67 L. Ed. 571, had run before action was commenced. This motion was denied. Whether the court below erred in not granting the motion presents the only question here raised.

The plaintiff's claim is unique in the sense that he does not claim that the defendant has discriminated against him, as in Pennsylvania R. Co. v. Puritan Coal Mining Co., 237 U. S. 121, 35 S. Ct. 484, 59 L. Ed. 867, and Illinois Central R. Co. v. Mulberry Hill Coal Co., 238 U. S. 275, 35 S. Ct. 760, 59 L. Ed. 1306, or that there was an unexplained failure to supply cars in confessedly normal times, as in Pennsylvania R. Co. v. Sonman Shaft Coal Co., 242 U. S. 120, 37 S. Ct. 46, 61 L. Ed. 188. The period was clearly an abnormal one of great car shortage. The railroads had been but recently returned from federal control. On April 1, 1922, a strike was declared by union coal miners east of the Mississippi and north of the Ohio river, and on July 1, 1922, the railway shopmen declared a strike upon practically all railroads. These events cooperated vastly to increase the number of mines to be served by the defendant and to decrease the number of cars available for such service. Embargoes were declared upon shipments to various points and over certain routes. The "gateways" between different sections of the country were clogged with freight and "empties" moving in opposite directions. Priority orders were issued

C. J. Jones, of Athens, Tenn. (J. B. Wright and Johnson & Cox, all of Knoxville, Tenn., Ashby M. Warren, of Louisville, Ky., and Sam J. McAllester, of Chattanooga, Tenn., on the brief), for appellant.

Vaughn Miller, of Chattanooga, Tenn. (Tatum & Tatum and Miller, Miller & Martin, all of Chattanooga, Tenn., on the brief), for appellee.

Before DENISON and HICKENLOOPER, Circuit Judges, and COCHRAN, District Judge.

HICKENLOOPER, Circuit Judge.

The appellee, plaintiff below, was the owner of an "emergency" coal mine upon the Cumberland Valley Division of the Louisville & Nashville Railroad Company; that is, a mine which could be profitably operated

by the Interstate Commerce Commission, likewise decreasing the supply of cars which would otherwise have been available to those not holding such orders. The extent and nature of the emergency have been noticed judicially in Avent v. U. S., 266 U. S. 127, 45 S. Ct. 34, 69 L. Ed. 202, and by the Interstate Commerce Commission in Ayrshire Coal Co. v. Southern Ry. Co., 96 I. C. C. 167.

■ The claim of the plaintiff is, not that he did not receive his proper share of the cars available for distribution, but that the defendant was not possessed of such an adequate supply of coal cars as was reasonably necessary to serve the mines upon its road during normal times, and, had it been so equipped, the number of cars furnished plaintiff would have been proportionately increased. Fundamentally, therefore, the duty of defendant which plaintiff alleges was breached was the duty to provide itself with reasonably adequate facilities to perform its professed public service, and not the duty to serve all who applied without discrimination, for it is conceded that this latter duty was performed in so far as the defendant was able to perform it with the equipment at hand. The former, we think, presented an administrative question for the initial determination of the Interstate Commerce Commission.

It is unnecessary for us to here determine the precise scope of the common-law duty to provide adequate facilities, or whether the profession of a common carrier extends beyond that it will serve all who apply, without discrimination, to the maximum extent of its ability in view of the equipment it has. Cf. Pennsylvania R. Co. v. Puritan Coal Mining Co., supra, at page 133 of 237 U. S., 35 S. Ct. 484, 59 L. Ed. 867. The reasonable adequacy of car supply presents a question which is indistinguishable in its legal aspects from a question of the *character of equipment* which the carrier must provide (Loomis v. Lehigh Valley R. Co., 240 U. S. 43, 36 S. Ct. 228, 60 L. Ed. 517) ; from one of the reasonableness of a rule by which open-top cars were supplied to tipple mines and box cars to wagon mines (Midland Valley R. Co. v. Barkley, 276 U. S. 482, 48 S. Ct. 342, 72 L. Ed. 664) ; from one where the attack is upon the reasonableness of a rule, or the method of car distribution practiced by the carrier (Pennsylvania R. Co. v. Clark Bros. Coal Mining Co., 238 U. S. 456, 35 S. Ct. 896, 59 L. Ed. 1406; Morrisdale Coal Co. v. Pennsylvania R. Co., 230 U. S. 304, 33 S. Ct. 938, 57 L. Ed. 1494) ; or from one where the claim is that unreasonable compensation for services in

connection with transportation had been allowed to the complainant's competitor (Mitchell Coal & Coke Co. v. Pennsylvania R. Co., 230 U. S. 247, 33 S. Ct. 916, 57 L. Ed. 1472). In all the cases just cited it was held that initial resort must be had to the Commission. In all it was recognized that the inquiry was one of fact and the exercise of reasonable discretion in technical matters; and that a determination could be reached only upon consideration of a mass of fact evidence, a proper appreciation of the rights and obligations of both carrier and shipper and the practical limitations upon the service reasonably to be required, and an intimate acquaintance with the innumerable problems of transportation. All of these questions relate to regulation in its legislative sense and demand the attention of experts. The rule is well stated in Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U. S. 285, 291, 42 S. Ct. 477, 66 L. Ed. 943, and should, we think, be here applied.

The plaintiff below relies principally upon Pennsylvania R. Co. v. Puritan Coal Co., supra, and Pennsylvania R. Co. v. Sonman Shaft Coal Co., supra. The authority of these cases in holding that remedies to enforce common-law rights not created by the Commerce Act are preserved by section 22 (49 USCA § 22), in so far as the questions thus arising are not peculiarly administrative in character, is not here questioned. In neither of these cases was the reasonableness of a rule or practice (in the instant case, the reasonable adequacy of car supply) raised or questioned; in both, elements of discrimination inferentially appeared. Both cases recognize that neither the right to receive nor the obligation to furnish cars for loading is absolute. The essential difference between the cases relied upon and the instant case lies in the nature of the inquiry to be made, in the absence from those cases of factors here present, and in the presence there of factors here absent.

■ It is also urged by the plaintiff that the statute of limitations prescribed by section 16(3) (b) of the Interstate Commerce Act, 49 USCA § 16(3) (b), has no application where the declaration alleges a right of recovery at common law. It is clear that if a cause of action is created by an act of Congress, the statute of limitations fixed by such act must govern. It would also seem that if the complaint deals with a matter of administration and regulation of interstate commerce, as to which Congress has thus occupied the field reserved to it by the Constitu-

tion, the separate statutory laws of the several states dealing with the same subject-matter will be superseded. Chicago, R. I. & P. Ry. Co. v. Hardwick Farmers Elevator Co., 226 U. S. 426, 33 S. Ct. 174, 57 L. Ed. 284, 46 L. R. A. (N. S.) 203; Louisville & N. R. Co. v. Brashear, 217 Ky. 439, 289 S. W. 1094. It is only by virtue of section 22 of the Interstate Commerce Act (49 USCA § 22) that all doubt is removed as to the preservation of theretofore existing rights and remedies under the common law. This section does not deal with a question of limitations, and without deciding whether the period of limitation fixed by the act applies to actions founded upon matters not made the subject of direct legislation by Congress, it is sufficient to say that in our opinion such limitation does apply to all actions involving subject-matter directly covered by the act and as to which the shipper is given the right to file a petition for reparation order with the Commission, and this whether the shipper elects to pursue that form of remedy or one given him by the common law. The enactment of a statute of limitations prescribing the time beyond which claims may not be asserted against interstate carriers is essentially a matter of regulation of interstate commerce, and the requirement of uniformity of treatment would be defeated by permitting "one period of limitation where the complaint is filed before the Commission, and the varying periods of limitation of the different states, where a suit was brought in a court of competent jurisdiction." Phillips v. Grand Trunk Ry., 236 U. S. 662, 667, 35 S. Ct. 444, 446, 59 L. Ed. 774; Kansas City So. Ry. v. Wolf, supra. So, also, the requirement of uniformity of treatment necessitates that the court give effect to such limitation, whether pleaded or not, whenever it appears upon motion for a directed verdict that the action has been barred. Just as a state may not fix a shorter period of limitation than that prescribed by Congress within the domain of its exclusive authority (Engel v. Davenport, 271 U. S. 33, 46 S. Ct. 410, 70 L. Ed. 813), so no state may fix a longer period than that prescribed by Congress. Compare, also, Arnson v. Murphy, 109 U. S. 238, 243, 3 S. Ct. 184, 27 L. Ed. 920.

It follows from what we have said that a peremptory instruction for the defendant should have been given in the court below both because there was no substantial evidence to support a cause of action properly cognizable by the District Court without initial resort to the Interstate Commerce Commission and because the petition was not filed within two years of the wrongs complained of and the asserted cause of action was founded upon subject-matter as to which Congress had passed regulatory legislation, including the limitation of time within which the petition must be filed.

The judgment of the court below is reversed, and the cause is remanded for further proceedings.