Katherine E. MODIN, Plaintiff-Appellant,

v.

NEW YORK CENTRAL COMPANY and/or its successors in interest; Penn Central and/or its successors in interest; Trustees of Penn Central—Robert W. Blanchette, Richard C. Bond, John H. McArthur—and/or its successors in interest; Consolidated Rail Corporation; Mutual of New York Life Insurance Company, Defendants-Appellees.

No. 78–1594.

United States Court of Appeals, Sixth Circuit.

Argued July 9, 1980.

Decided June 2, 1981.

Keith V. Moore, Memphis, Tenn., for plaintiff-appellant.

Everett B. Gibson, Gregory G. Fletcher, Laughlin, Halle, Regan, Clark & Gibson, Memphis, Tenn., for Trustees & Conrail.

Henry T. V. Miller, McDonald, Kuhn, Smith, Gandy, Miller & Tait, M. Weddington, Memphis, Tenn., for N. Y. Life.

Before MERRITT, CORNELIA G. KENNEDY and BOYCE F. MARTIN, Jr., Circuit Judges.

MERRITT, Circuit Judge.

This case arises from the cancellation of an insurance policy on the life of an employee of the New York Central Railroad. Defendant Penn Central Railroad cancelled the policy without notice after the 1966 merger of the Pennsylvania and New York Central Railroads. Plaintiff's decedent, Roy A. Modin, was a long-time non-union clerk for the New York Central in its Memphis office prior to the merger. Four years before the merger, New York Central obtained and began paying the premium on a group life insurance policy with defendant Mutual of New York Life Insurance Company for a class of non-union employees, including Modin. Modin's policy was cancelled after the merger when he became a union member subject to the pay and fringe benefits of the collective bargaining agreement. The policy contained a conversion clause allowing Modin to continue the policy himself if cancelled by the railroad, a privilege Modin did not exercise because the railroad did not give him notice of the cancellation. Had the policy remained in effect at the time of Modin's death in 1975, it would have paid plaintiff, Modin's widow, approximately $30,000.

After the merger, Penn Central cancelled the policy on Modin's life because under the merger agreement, as modified and approved by the Interstate Commerce Commission, Modin was required to join the Brotherhood of Railway Clerks as a condition of employment. As a union member, he was no longer a member of the class of employees covered by the group life policy. He received added benefits and job security under the collective bargaining agreement, but his life insurance benefits as a union member were reduced to $6,000.

Neither the policy itself nor any contractual arrangement between Modin and New York Central required the railroad to give the employee notice of cancellation. No such notice was ever given. Modin apparently did not know that his transfer to union status forfeited the policy. At no time was he ever advised that transfer to union status would effect a cancellation of the policy. On July 23, 1974, six years after the cancellation, he wrote a letter to the Brotherhood of Railway Clerks advising the union that he had relied on continued insurance coverage and asking the union for confirmation that the life insurance policy was still in effect.[1] He apparently did not receive a reply.

In this action Modin's widow makes two federal claims and a state claim. (1) The cancellation of the old policy by Penn Central violated both 49 U.S.C. § 5(2)(f) (a

---

1. The letter in its entirety reads as follows:

1812 Whitman
Memphis, Tennessee 38116
July 23, 1974
Mr. C. L. Dennis,
International President,
Brotherhood of Ry, Airline & Steamship Clerks,
6300 River Road
Rosemont, Ill. 60018
Dear Mr. Dennis:
I have received the attached letter from Mr. C. L. Stainbrook, SWSM, Penn Central Transportation Co., Houston, Texas.
What I cannot understand is why the Off-Line people have not been informed by the Brotherhood. Representation for the Off-Line offices is nil, as we never hear anything from our Brotherhood except for the paper and magazine. We do not even know who to contact, addresses, telephone numbers, etc, in case we should have any problems and need to act quick.
Would like to bring to your attention the fact that for around 25 years I held Life Insurance

with the NYC and PC under "excepted" position (non union) and this life insurance increased in 1966 to double my annual salary. I have the policies and letters to substantiate this.
My understanding is that when the Merger took place that we should not lose any of our fringe benefits, which actually amounts to a cut in salary.
As you know, the BRAC Life Insurance is only $6,000, whereas the non-agreement employees have life insurance in the amount of twice their annual salary, and with salaries increasing in 1975 their life insurance policies will be considerable more. I had banked on this insurance, or would have taken out more life insurance years ago.
Will you please set me straight on this matter, as I plan to go after this life insurance if I am entitled to it.
Thanks much.
                    Sincerely and Fraternally,
                    Roy A. Modin

provision of the Interstate Commerce Act governing treatment of employees during railroad consolidations)[2] and the employee protection provisions of the I.C.C. order approving the merger under § 5(2)(f).[3] (2) The cancellation without notice prevented the exercise of the conversion privilege contained in the policy and the failure to give notice violated the terms of the I.C.C. order approving the merger, even if the cancellation was proper.[4] (3) In any event, the cancellation by his employer and the insurance company without specific notice to the employee prevented exercise of the conversion privilege provided in the policy and violated applicable principles of state insurance law requiring notice. We will address these issues in the order listed.

On motion for summary judgment, the District Court ruled in favor of the defendants. It ruled that the cancellation and failure to notify did not violate federal law. It further held that under applicable choice of law principles Tennessee law applies and that under Tennessee law neither the employer nor the insurance company incurred liability by failing to notify Modin of the cancellation of the policy. We affirm, but for reasons different from those asserted by the District Court.

## I.

Section 5(2)(f) of the Interstate Commerce Act requires the I.C.C. in connection with railroad mergers to "require a fair and equitable arrangement to protect . . . railroad employees." Employees have a private right of action for damages against a railroad for violations of the employee arrangements imposed by the I.C.C. in connection with the approval of railroad mergers. *Norfolk & Western Railway Co. v. Nemitz*, 404 U.S. 37. 92 S.Ct. 185, 30 L.Ed.2d 198 (1971).

The first question in the instant case is whether the railroad's cancellation of the group life policy on Modin's life violated the conditions imposed by the I.C.C. in its order approving the merger. All parties agree that one of the conditions imposed by the I.C.C. with the consent of the railroads for the protection of employees was the requirement that non-union clerks in Modin's position join the Brotherhood of Railway Clerks as a condition of employment. Plaintiff does not contend that this condition was invalid. Plaintiff recognizes that the I.C.C. order and the merger agreement do not mention cancellation of the insurance policy in question or cover this subject specifically. Rather she argues that the

---

**2.** At 49 U.S.C. § 5(2)(f), the Act provides in pertinent part: "As a condition of its approval [of a railroad merger], the Commission shall require a fair and equitable arrangement to protect the interests of the railroad employees affected. In its order of approval the Commission shall include terms and conditions providing . . . such transaction will not result in employees of the carrier . . . being in a worse position with respect to their employment . . . ."

**3.** The I.C.C. order in question contains two paragraphs relevant to the issue. The first paragraph says that no employee "shall be deprived of employment or be placed in a worse position with respect to compensation, working conditions, fringe benefits or rights and privileges pertaining thereto at any time during employment."

The second relevant paragraph of the I.C.C. order provides:

As to the affected employees not represented by the signatory unions, § 5(2)(f) requires that a fair and equitable arrangement be provided to protect their interest . . . . The

agreement [with the union], if made applicable to these employees as well as the 75% of the work force represented by the 23 unions, would provide the required guarantees . . . . [I]t would appear, that as the product of the negotiation efforts of the leaders of the signatory unions, the agreement . . . embodies the kind of benefits which rail labor in general seeks . . . . We find it fair and equitable, and as a condition to our approval of the merger, require that [the agreement] be applied to the affected employees not represented by the signatory unions.

Pennsylvania R.R. Co.—Merger—New York Central R.R. Co., 327 I.C.C. 475, 543–45 (1966).

**4.** The I.C.C. order approving the merger provides that a non-union employee in Modin's position will be "notified by the Company that he will be affected in his employment as a result of the merger [concerning] . . . protective benefits" so that he "will have adequate information upon which to act with regard to the employee protections afforded herein . . . ." 327 I.C.C. at 545.

I.C.C. order and the merger agreement should be construed to prohibit cancellation because the cancellation of the policy violates the spirit of the I.C.C. order and the merger agreement, one of the purposes of which was to see that employees are not "placed in a worse position" as a result of the merger "with respect to working conditions, fringe benefits or rights and privileges pertaining thereto . . . ."

■ Plaintiff's argument on this federal claim is unpersuasive. The cancellation of the policy was not unfair. Although Modin lost his $30,000 life insurance policy and received instead a $6,000 policy when he joined the union, he received in addition significant benefits as a union member from 1968 to 1975 that he would not have otherwise received. His rate of pay increased dramatically, and he received job security. As a result he was not laid off after the merger or when Penn Central became insolvent and filed proceedings in bankruptcy. Modin was not entitled under § 5(2)(f) of the Act or the I.C.C. order approving the merger or any contractual arrangement to receive all of the benefits of his old status as a non-union member as well as the added benefits of his new status as a union member. No principle of federal law, nor any contract made pursuant to a federal statute or regulation governing the merger, required the railroad to continue Modin's non-union group life insurance policy.

## II.

■ Plaintiff's second claim is that defendants' failure to provide notice of cancellation violated the terms of the I.C.C. order approving the merger. Although the notification provision of the order may be subject to varying interpretations, we believe that Modin should have received notice from his employer that his transfer to union status would effect a forfeiture of his life insurance policy, so that he could take advantage of the policy's conversion privilege.[5] The I.C.C. order approving the merger contemplates that non-union employees will have some decisions to make "as to protective benefits" and may choose "recourse to benefits in some way not a part of the [mandatory] conditions" imposed by the I.C.C. To this end the I.C.C. order contemplates that the non-union employee be "notified by the Company that he will be affected" and be given "adequate information upon which to act." 327 I.C.C. at 545.

■ Any claim based on the I.C.C. order, however, is time-barred. Plaintiff's suit, filed in September 1976, is too late. The statute of limitations applicable to this action is provided by the Interstate Commerce Act, at 49 U.S.C. § 16, par. (3)(b):

> All complaints against carriers subject to this chapter for the recovery of damages not based on overcharges shall be

**5.** Judge Kennedy takes the position in her concurring opinion that the employer's failure to provide notice in 1968 was not the proximate cause of plaintiff's injury because the employee's failure to continue his insurance individually came only after a second transfer in 1972. In so concluding, she points to Modin's transfer to a non-union position in 1970, his voluntary return to a union job in 1972, and the employer's failure to notify him at that later date. She argues that the employer had no federal duty to notify Modin in 1972 under the Interstate Commerce Act because the railroad reorganization was complete and that the railroad's 1972 omission constitutes a superseding, intervening cause. The employer's failure to notify in 1968, however, seems clearly to be a cause in fact of the injury. But for that original failure to notify, Modin could not have remained unaware of the insurance consequences of a change to un-

ion status in 1968 or 1972. Had the employer notified Modin in 1972, it could have eliminated any chance that its earlier failure to notify would cause subsequent harm. But whether, as Judge Kennedy concludes, the 1972 failure to notify constitutes an independent intervening cause of harm is a factual issue that should not be resolved against plaintiff in reviewing defendants' motion for summary judgment. *See Michael v. United States*, 338 F.2d 219, 221 (6th Cir. 1964). It seems strange, indeed, to say that the employer's 1972 omission can cure its 1968 omission. It should have foreseen in 1968 that the employee might remain unaware of his rights at a later date.

We do agree with Judge Kennedy and the District Court that federal law imposes no liability on defendant insurance company for failure to notify Modin of the cancellation by his employer.

filed with the commission within two years from the time the cause of action accrues, and not after . . . .

It is well settled that the limitation applies to complaints filed in the courts as well as those filed with the I.C.C. *A. J. Phillips Co. v. Grand Trunk Western Railway*, 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774 (1915). It is also clear that the complaint need not be based directly upon the statute for the limitation to apply. In *Louisville & Nashville Railroad v. Cory*, 54 F.2d 8 (6th Cir. 1931), the plaintiff relied on federal common law rather than the Interstate Commerce Act in making a claim against a carrier subject to the Act. He argued that for that reason the Act's statute of limitations did not apply. The court rejected the argument. It noted that an action based directly on the Act would, of course, be governed by its limitation period and concluded that the same period must "apply to all actions involving subject-matter directly covered by the act." *Id.* at 11. The time at which the two-year limitation begins to run, however, is less certain. It is not appropriate for the period to begin when the wrong complained of—the failure to provide notice—occurred, because plaintiff might remain unaware of the wrong until long after the limitation period had ended. This Court has recognized that problem but has employed more than one test to determine the point at which the period begins to run. In *Union Carbide & Carbon Corp. v. Stapleton*, 237 F.2d 229 (6th Cir. 1956), the plaintiff sued his employer for failing to notify him of disease identified by the employer's physical examination of him. Then-Judge Potter Stewart, finding that the Tennessee law on which the substantive claim was based provided no answer to the limitations problem, held that the defendant's continuing duty to notify ended only when the plaintiff left its employ. Later Sixth Circuit decisions have set up a rule that in some cases points to a different result. In cases involving Federal Tort Claims Act malpractice claims, which raise similar problems of the wrong not coming to the plaintiff's attention until after the limitations period has run, this Court has held that the limitations period begins to run "when the claimant discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [wrong]." *Jordan v. United States*, 503 F.2d 620, 622 (6th Cir. 1974). This rule, described by then-Judge Wade McCree as "the general rule," has also been applied to an unfair labor practice claim. *N.L.R.B. v. Allied Products Corp.*, 548 F.2d 644, 650 (6th Cir. 1977). The application of the rule seems appropriate in this case as well.

■ But either rule applied here brings the same result. Under Justice Stewart's rule, the limitations period would have begun in May 1970, when Modin returned to a non-union position and thereby regained insurance coverage. As of that date, defendants' duty to warn ended; they no longer had anything of which to warn. The two-year period would have ended in May 1972, before Modin returned to a union position. Under the more flexible rule employed by this Court in more recent cases, plaintiff's cause of action could have accrued no later than July 1974. In that month Modin wrote the letter requesting confirmation of his status but received no answer. By that time, if not earlier, Modin must have "discovered, or in the exercise of reasonable diligence should have discovered" his employer's wrong. *Jordan v. United States*, 503 F.2d at 622.

### III.

■ Plaintiff's third claim rests on duties imposed by state law. She argues that defendant railroad companies failed to provide the notice of cancellation of the insurance policy that state laws mandate.[6] We conclude that because state laws are preempted by federal regulation, her claim fails.

---

6. We also agree with the District Court in its finding that state law imposes no liability on defendant insurance company for failure to notify Modin of the cancellation by his employer. *See Reger v. National Ass'n of Bedding Mfrs.*, 372 N.Y.S.2d 97, 122, 83 Misc.2d 527 (1975); Tenn.Code Ann. § 56–7–601(c); *Metropolitan Life Ins. Co. v. Owens*, 193 Tenn. 545, 246 S.W.2d 971 (1952); *American Nat'l Ins. Co. v. Jackson*, 12 Tenn.App. 305 (1930).

The Interstate Commerce Act provides a comprehensive scheme of federal regulation of railroads, including detailed provisions regulating mergers and the protection of employees. It is clear that Congress has the power to preempt state law in the field of railroad mergers, and it has expressed its concern that state law not interfere with such transactions at 49 U.S.C. § 5, par. (11):

> The authority conferred [on the I.C.C.] by this section shall be conclusive and plenary, ... and any carriers ... participating in a transaction approved or authorized under the provisions of this section shall be ... relieved from the operation ... of all ... restraints, limitations, and prohibitions of law, Federal, State, or municipal, insofar as may be necessary to enable them to carry into effect ... the terms and conditions, if any, imposed by the Commission....

In this area "the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law." *Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173, 176, 63 S.Ct. 172, 173, 87 L.Ed. 165 (1942). "[S]tate regulation must give way" because it cannot "be enforced without impairing the federal superintendence of the field ...." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).

The merger of multi-state railroad systems implicates important national interests that should not be thwarted by state rules imposing possibly conflicting duties. In this case, no state has expressed an intent that its notice requirements be applied in the context of interstate railroad mergers; rather plaintiff seeks to import duties validly imposed by states in other contexts into this. Here, federal law has itself provided protection for the interests state law might recognize. The effect of a federal statute of limitations imposed on a federal right would be diminished if state limitations periods could extend the periods for identical rights granted by the state. The opera-

tion of an interstate railroad system would be needlessly complicated if varying rights of notification prevailed in the different states it touches. Federal interests would be equally infringed if the state in which an interstate railroad is incorporated could impose conditions of notification applicable to employees located in other states.

Because we conclude that state law is preempted, we need not reach the questions of choice of law raised and briefed by the parties. Accordingly, the judgment of the District Court is affirmed.

CORNELIA G. KENNEDY, Circuit Judge, concurring.

I agree with the panel that plaintiff-appellant does not have a claim under the I.C.C. order for the cancellation of the insurance. I also agree that her tort claim that the railroad failed to notify her deceased husband of his change in insurance coverage is barred by the statute of limitations. However, I differ as to the rationale for the denial of the tort claim and would prefer to rest upon the reasons stated by the District Court.

The District Court ruled for the defendants-appellees on their motions for summary judgment. It found that the facts were not in dispute that the decedent had been covered by the $30,000 non-union life insurance policy until the merger in 1968, when, pursuant to labor agreements, the decedent became a union member covered only by the $6,000 union group-life insurance policy. However, subsequent to that, during 1970–72, decedent was again placed on an exempt or non-union status and was again covered by the $30,000 policy. At his request, in 1972, he was transferred back to a union position and once again was covered by the $6,000 policy. The District Court only considered the tort claim of whether decedent should have been warned when he was last transferred from non-union to union status. It held that that state claim was not recognizable by Tennessee law and was barred by New York's statute of limitations.

The panel holds that there is a federal right to be notified when the decedent was first transferred from non-union to union status based on the I.C.C.'s order in this case. It goes on to hold that this federal right is barred by the statute of limitations. Further, it holds that national concerns with railroads and their mergers preempted any state tort claim for failure to warn when the decedent was first transferred.

I do not think the Court need reach these questions as it is clear that the first failure to warn was not the proximate cause of the injury in the present case. To be actionable, an act of negligence must have been a proximate cause of the claimed tortious event. An intervening cause which is independent of the negligence absolves the first negligent actor of his liability. See Hicks v. United States, 511 F.2d 407, 421, 167 U.S. App.D.C. 169 (1975) (finding no intervening cause); Michael v. United States, 338 F.2d 219, 221 (6th Cir. 1964) (finding an intervening cause). Had the decedent died before being placed again on non-union status, then the injury would have been caused by the first failure to warn. However, when he was transferred to non-union status after the merger, he was again covered. Had he died during this period of coverage, his widow would have recovered the full $30,-000 despite any failure to warn at the time of the merger. Her failure to recover $30,-000 was caused by a failure to warn of the change in coverage when he was transferred to union status a second time. This second failure to warn is thus an independent and intervening cause of the injury. The record does not indicate that this second failure to warn was in any way related to the merger. Therefore, the proximate cause of the injury—the alleged second failure to warn—cannot give rise to a federal cause of action.

There remain to be considered the decedent's widow's claims under state theories. The District Court found that at the time of the second transfer the contract was with a New York insurance company and a Pennsylvania railroad company. The policies were issued in New York. The decedent's duty station was Memphis, Tennessee. The court found that it was in Tennessee where allegedly the decedent should have been warned of the change in insurance coverage so he could extend the coverage himself and where the benefits were to be paid.

A federal court when considering the state claims in a diversity case must apply the conflict of laws rules prevailing in the forum state. In Tennessee, the law of the place of wrong, or lex loci delicti, controls an action sounding in tort. See Telecommunications, Engineering Sales & Services Corp. v. Southern Telephone Supply Co., 518 F.2d 392, 394 (6th Cir. 1975) (Georgia law applied as that is place of alleged failure to discharge employee who had signed a contract in Tennessee not to work for competitor); Winters v. Maxey, 481 S.W.2d 755, 756 (Tenn.1972).

Tennessee does not recognize a claim against the employer for failure to warn the beneficiaries of a group insurance contract that the contract was being cancelled. The parties to the contract are the employer and the insurer, not the employees who are the beneficiaries. See Davis v. Metropolitan Insurance Co., 161 Tenn. 655, 660–61, 32 S.W.2d 1034 (1930). Thus, the decedent's widow in the present case is without a remedy under federal or state law for her claim and the judgment of the District Court should be affirmed.